SAMUEL P. WILLIAMS v. CYRUS J. KEYES ET AL.

*Mortgage—Payment—Right of assignee—Bills and notes.*

1. A mortgagee assigned the mortgage and accompanying negotiable note by delivery, and before maturity, as collateral security to his note, and the mortgagor, in ignorance of such assignment, paid the mortgage debt to the administrators of the mortgagee, who did not produce nor have in their possession the note or mortgage; which payment is held no defense to the foreclosure of the mortgage by the holder of the securities.

2. How. Stat. § 5687, which provides that the recording of an assignment of a mortgage shall not, in itself, be deemed notice to the mortgagor so as to invalidate any payment made by him to the mortgagee, is construed to mean that the mortgagor shall not be required to search the records before making payment to one *prima facie* entitled to receive it, who, in case of negotiable securities, is the holder alone.

3. Neither under the statute cited nor the law-merchant can the maker of a negotiable note assume that it has not been transferred, and make payment thereof before maturity to the original holder, and thus defeat the rights of a purchaser for value before maturity.

Appeal from Branch. (Peck, J., presiding.) Argued January 21, 1892. Decided February 12, 1892.

Bill to foreclose a mortgage. Defendants Keyes appeal. Decree affirmed. The facts are stated in the opinion.

*H. H. Barlow,* for complainant, contended:

1. To raise an equity to correct a deed, there must not only be an error on both sides, but ·the mistake must be admitted or be directly proved; citing *Tripp v. Hasceig,* 20 Mich. 263; and the proof that both parties intended to have the precise agreement set forth inserted in the deed, and omitted to do so by mistake, must be made beyond a reasonable doubt, and so as to over-. come the strong presumption, arising from the signatures and . seals, that the contrary is the fact; citing *Iron Co. v. Iron Co.,* 102 Mass. 45; and see, as to the proof required, *Shepard v. Shepard,* 36 Mich. 173; *Vary v. Shea,* Id. 388.

*Charles N. Legg,* for appellants, contended:

1. The deed contains a ˙latent ambiguity, and is a proper subject for explanation, which may be done by parol, the question not being one of a mistake in the description or the boundary, but as to the identity of the land conveyed; citing *Ives v. Kimball,* 1 Mich. 308; *Anderson v. Baughman,* 7 Id. 69; *Johnstone v. Scott,* 11 Id. 239; *Wiley v. Lovely,* 46 Id. 83; *Vaughn v. Sheridan,* 50 Id. 158; *French v. Case,* 77 Id. 64.

2. The rules for the construction of deeds are only* for reaching the probable intent of the instrument, and are necessarily flexible, and every word and clause must, if possible, be given effect, and be made to harmonize with the rest; citing *Moran v. Lezotte,* 54 Mich. 83; but the whole description must be construed together, and with a view to carry out˙ the intent of the parties; citing *Bassett v. Budlong,* 77 Mich. 338; *Bradish v. Yocum,* 130 Ill. 386; *Grueber v. Lindenmeier,* 42 Minn. 99; and see *Purkiss v. Benson,* 28 Mich. 538, where a conversation between the parties in the presence of the scrivener was admitted for the purpose of explaining boundaries, and as a part of the *res gestæ;* and a description may be aided by means of usual

local inquiries; citing *Persinger v. Jubb*, 52 Mich. 304; *Dwight v. Tyler*, 49 Id. 614; *Ives v. Kimball*, 1 Id. 308; and the intent of the parties in this as in other contracts should govern the court; citing *Bassett v. Budlong*, 77 Mich. 338.

MORSE, C. J. The complainant filed this bill to foreclose a mortgage.

The undisputed facts of the case are substantially as follows: The defendant Cyrus J. Keyes, in 1884, was a merchant in the village of Bronson, Branch county, in this State. He owned lot 1 of C. D. Randall's addition to said village. There was located upon said lot a wooden store building, in which he was doing business. This building was destroyed by fire that year. At this time he was largely indebted to C. L. Luce & Co., of Toledo, Ohio. C. L. Luce, of that firm, agreed to furnish the means to rebuild, and did so, putting up two brick stores upon the lot, with a partition wall between them, but communicating from the inside with one or more doors. The amount advanced by Luce was $6,500. On December 18, 1884, Keyes gave his promissory note to Luce for that amount, payable in three years from date, with interest at 7 per cent., payable semi-annually, and Keyes and his wife, the defendant Sarah A. Keyes, executed and delivered to Luce a mortgage for the same amount upon the property as collateral security to said ·note. This is the mortgage being foreclosed in this suit. In October, 1885, C. L. Luce borrowed $5,000 of the complainant, and gave his note therefor, and also turned out to him the Keyes note and mortgage as collateral security to his note, but executed no written assignment of the same. C. L. Luce died September 15, 1886, and the defendants Arthur B. Luce and Clarence Brown were appointed his administrators. After this, Cyrus J. Keyes sent for Arthur B. Luce, who went to Bronson. It was found that Keyes was owing C. L. Luce & Co., includ-

ing this mortgage indebtedness, about $12,000. Keyes did not know that Luce had assigned or pledged this mortgage. An arrangement was made October 25, 1886, by which Keyes and wife made a deed to Arthur B. Luce and Clarence Brown, as administrators of the estate of C. L. Luce, deceased, and also turned over to them his stock of goods, inventorying at cost price about $3,800. The deed described the property deeded as follows:

"The two-story brick store and lot, being lot No. one of C. D. Randall's addition to the village of Bronson," and contained the following clause: "This deed is made subject to a certain mortgage made and executed by Cyrus J. Keyes and Sarah A. Keyes to Charles L. Luce, for $6,500, and recorded in Liber 17 on page 352 of Mortgages, Branch county, and is full payment of said mortgage."

On the same day Cyrus J. Keyes made a deed to his wife, Sarah A. Keyes. The real estate conveyed was described in said deed as follows:

"The brick store and lot situated on the north side of Chicago street, and known as lot number one, and a fractional part of lot number two, of C. D. Randall's addition to the village of Bronson."

In connection with these two deeds it may be stated that it is admitted in the record that at the time the mortgage was made, and before the brick stores were built, in order to make a better line between lots 1 and 2, measurements had been taken, and Sanborn, who owned lot 2, had agreed to deed to Keyes a wedge-shaped piece of land off from the north end of the west side of lot 2 in exchange for a wedge-shaped piece to be deeded to him by Keyes from off the east part of the south end of lot 1. The stores were built so as to correspond with this new line, and it is stipulated by the parties that, whatever decree is made, it shall be in accordance with such line, as deeds have since passed

between Sanborn and Keyes, carrying out their verbal agreement to exchange lands as aforesaid.

The defense to this foreclosure is, on the part of the defendants Cyrus J. and Sarah A. Keyes, that it was intended to deed only one of these brick stores, to wit, the west store, and that the east store was never intended to be deeded to Luce and Brown, and that they have never had possession of it, and that by the execution of the deed to them the mortgage was paid and released as against said east store property. It is not claimed that the note and mortgage were in the hands of Arthur B. Luce when this deed was made, but Keyes testifies that Luce promised to discharge the mortgage. He is corroborated by the justice of the peace, Seth Monroe, who drew the deeds to Luce and Brown, and also the deed to Sarah A. Keyes. Arthur B. Luce denies that the deed was intended to cover only the west store, and says further that he took the deed, not as an absolute conveyance in payment of the mortgage, but as additional security to his mortgage and other debts owing to C. L. Luce & Co., and also to aid Keyes in preserving his property from other creditors, to whom Keyes was owing $3,000 and upwards. Luce says in his answer that the goods received at the time the deed was made were not sufficient to pay the indebtedness of Keyes to C. L. Luce & Co., nor would the real estate covered by the mortgage, if sold at a fair price, be sufficient to realize an amount sufficient to pay such indebtedness; but that he and Brown, as administrators, are anxious to come to an accounting with Keyes, and that, if from the sale of such real estate there should be more than sufficient to pay such indebtedness, they are desirous it should be paid over to said Keyes; and they ask the same relief as though they had filed a cross-bill, and that an accounting may be had with said Keyes.

The amount found to ·be due upon the mortgage by the court below on the 23d day of May, 1891, the date of its decree, was $8,127.89, and the amount due to the complainant upon the note of Charles L. Luce to him was decreed to be at the same date $5,063.76. The decree was in favor of the complainant in this last-named amount, and the usual sale in foreclosure cases was ordered of the whole premises, if said sum, with interest at 7 per cent., was not paid on or before the 1st day of July, 1891. The surplus, if any, upon such sale was ordered to be deposited in court, to abide the further order of said court. The defendants Cyrus J. and Sarah A. Keyes appeal from this decree.

The fact that the deed to Luce and Brown recites that it is in full payment of the mortgage, and the further fact that a deed was made by Keyes to his wife the same day, which differed in its description from the other deed in its reference to lot No. 2, raise a strong presumption that the claim of Keyes that only the west store was to be conveyed by this deed is true. Monroe also swears positively that this was the intention of the parties, and that, if he had known that there were two stores on lot 1, he would have been more specific in his description of the land conveyed. It would also appear that Keyes or his wife has always retained possession of the east store, and had the rents and profits of the same.

But it is unnecessary to determine or discuss this question. The note made by Keyes to C. L. Luce was a negotiable one, and was transferred to complainant before due, and for a valuable consideration. Under the previous rulings of this Court he took this mortgage free from all equities of which he had no notice between Luce or his administrators and Keyes; and any payment made to Arthur B. Luce, or arrangement between him and Keyes, after the note and mortgage were transferred to com-

plainant, could not affect the latter's rights in the premises. See *Reeves v. Scully,* Walk. Ch. 248; *Dutton v. Ives,* 5 Mich. 515; *Helmer v. Krolick,* 36 Id. 371; *Judge v. Vogel,* 38 Id. 568. After the assignment of the mortgage, and indorsement and delivery of the note, to complainant, and before maturity, the defendants assumed to pay the note and mortgage to the administrators of the original mortgagee, without requiring the production of the note; and the only question here is, could they thus discharge the note and mortgage, so as to defeat the right of a good-faith purchaser? The statute (How. Stat. § 5687) provides that—

"The recording of an assignment of a mortgage shall not, in itself, be deemed notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee."

This statute has no application whatever to the present case. It was not intended to authorize the mortgagor to pay the mortgage to one not the holder of the note; but if a payment be made to one who, by the possession of the evidence of debt, shows himself *prima facie* entitled to receive payment, or, in case of non-negotiable security, if the payment be made to the original holder, the fact that an assignment has been placed of record will not, of itself, invalidate a payment made in good faith to such apparent owner. The statute means no more than that the mortgagor shall not be required to search the record before making payment to the one *prima facie* entitled to receive it. In case of negotiable securities, the holder alone is the one *prima facie* entitled to receive payment. Neither under the statute nor under the law-merchant can the maker of a negotiable note assume that it has not been transferred, and make payment thereof before maturity to the original holder, and thus

defeat the right of a purchaser for value before maturity. The case of *Dutton v. Ives* is directly in point. See, also, 2 Daniel, Neg. Inst. § 1233, and cases cited. It is conceded that complainant had no notice or knowledge of this alleged agreement between Arthur B. Luce and Keyes that this mortgage should be released upon the east store.

The decree of the court below must be affirmed, with costs.

McGrath, Long, and Montgomery, JJ., concurred. Grant, J., did not sit.