Mortgage Co. v. Randall.

No. 24,002.

THE PIONEER MORTGAGE COMPANY, *Appellant*, v. JOHN L. RANDALL
*et al., Appellees.*

SYLLABUS BY THE COURT.

1. FORECLOSURE OF MORTGAGE—*Payment to Alleged Agent—Burden of Proof of Agency.* In an action to foreclose a mortgage, the mortgagors resisted payment on the ground that it was paid before maturity to an agent·of the mortgagee. *Held,* it was incumbent upon them to prove such agency and payment, and where there was a failure so to do, it was error for the court to refuse to foreclose the mortgage.

2. SAME—*To\ Whom Payments on Mortgage Were to Be Paid—Refusal to Make Special Finding.* Where the plaintiff alleged, and the testimony showed, that semiannually, and a short time before the maturity of each of the interest coupons attached to the note, it mailed to the defendants a printed notice which contained the statement, "No one is authorized to collect for us. Make all remittances direct to the Pioneer Mortgage Company, Topeka, Kansas," *held,* it was error for the court, on proper request, to refuse to make a finding showing such action by plaintiff.

3. SAME—*Possession of Note and Mortgage—Evidence.* The lack of possession of a note and mortgage is sufficient to put the debtor on inquiry as to the authority of the alleged agent to receive payment.

4. SAME—*Disposition of Funds in Hands of Corporation—Presumption.* Where no disposition is shown of funds once in the hands of a corporation it is presumed to still retain them.

Appeal from Lyon district court; WILLIAM C. HARRIS, judge. Opinion filed March 10, 1923. Reversed.

*R. W. Blair,* and *T. M. Lillard,* both of Topeka, for the appellant.
*Owen S. Samuel,* of Emporia, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: This was an action by the Pioneer Mortgage Company against John L. Randall and others, to foreclose a mortgage on a farm in Lyon county. The defendants claimed to have made payment to Edward J. Conklin as agent of the plaintiff. Judgment was for defendants, and plaintiff appeals.

The original note and mortgage was for $1,500 executed on the 22d of September, 1914, and payable October 1, 1921. Interest was payable semiannually. The petition alleged that interest which fell due on April 1, 1920, was not paid, the principal indebtedness thereby became due and the mortgage subject to foreclosure. In

1919 the Randalls, desiring to procure additional money, executed a mortgage to the Southwestern Farm Mortgage Company for $2,000. They received the proceeds of $500 and the balance of $1,500 was to pay plaintiff's mortgage. Following the execution by the Randalls of the mortgage to the Southwestern Farm Mortgage Company, they conveyed their interest in the land of O. G. Samuel, who is one of the defendants. It is claimed by the defendants that Conklin was the agent of the plaintiff from the time of the negotiations and execution of the mortgage sued on until the execution by the Randalls of the $2,000 mortgage to the Southwestern Farm Mortgage Company, and that, as such agent of plaintiff, Conklin received from the Randalls the $1,500 with which to pay plaintiff's mortgage. They allege in their answer, "That afterwards  .  .  .  said defendants, desiring to increase said mortgage indebtedness from $1,500 to $2,000, orally informed said Edward J. Conklin, as such agent, they desired to pay off said mortgage, and did  .  .  .  pay said mortgage to him; the said Edward J. Conklin, as the agent of plaintiff, accepted as and for full payment of said mortgage, the sum of $1,500 for said plaintiff company."

Plaintiff filed a verified reply to the answer of defendants in which it specifically denied that Conklin was the agent of the plaintiff or was recognized or held out by the plaintiff in any form or manner as its agent with authority to accept or receive payment of the mortgage indebtedness of defendants or any other person; also, that, at the time of making the loan to the Randalls, plaintiff mailed them a notice containing the words, "Make all remittances payable to the order of the Pioneer Mortgage Company, Mulvane Building, Topeka, Kansas, otherwise we will assume no responsibility in the matter," and that, "Shortly prior to the maturity of each of the interest coupons attached to the note secured by the mortgage,  .  .  .  plaintiff mailed to said answering defendants a printed notice  .  .  .  'No one is authorized to collect for us. Make all remittances direct to The Pioneer Mortgage Company, Topeka, Kansas.' "

Sometime after the execution by the Randalls of the mortgage to the Southwestern Farm Mortgage Company, but before the same was paid by Samuels, Conklin absconded.

To support their contention defendants introduced a large number of letters showing Conklin to have been negotiating loans for plaintiff, paying out the proceeds of loans, taking up outstanding

liens when loans were made, receiving and transmitting interest payments, etc. It is not necessary to here set out the letters. It may be observed, however, that no evidence was introduced to show that the defendants had knowledge of such letters or their contents or of other transactions between the plaintiff company and Conklin, or that they could have been influenced thereby. The principal questions were whether Conklin was the authorized agent of the plaintiff to collect the money, or if not such agent, whether plaintiff had so held him out that it was estopped from denying his agency, and whether defendants actually paid Conklin the $1,500 for which they supposed plaintiff's mortgage would be released.

We find in the record no testimony showing express authority to Conklin to collect for the plaintiff, nor is there evidence of dealings between the plaintiff and Conklin brought home to the defendants before the alleged payment that would justify the defendants in presuming such agency or that would estop plaintiff from denying it.

In *Goodyear v. Williams*, 73 Kan. 192, 85 Pac. 300, it was said in the syllabus:

"Where a debtor delivers money to a third person for the purpose of paying a promissory note which is not due, and such person does not have the note in his possession, the presumption is that the person receiving the money does so not as the agent of the creditor but as agent for the debtor. This presumption can only be overcome and the converse established by evidence to the contrary." (¶ 2.)

And in the opinion it was said:

"The presumption of agency from the possession of the note by the person claiming payment is ordinarily sufficient in itself to justify the debtor in making the payment, and the want of such possession is of itself sufficient to put the debtor upon inquiry as to the authority of the agent to receive payment. If this be so, it would seem that the circumstances must be strong, in the absence of direct authority from the creditor, that would justify a debtor in paying a note, especially one not due, to a pretended agent so as to bind the creditor thereby. Such circumstances, it would seem, must practically amount to an estoppel upon the creditor to deny the authority of the agent—an estoppel *in pais*." (p. 195.)

Testimony by defendants of statements by Conklin were not sufficient to bind the plaintiff.

It was further said in *Goodyear v. Williams*, supra:

"The evidence of Williams as to what Goode said in regard to the payment of the interest coupons to him would only be competent after the agency of Goode was established, and is incompetent for the purpose of establishing such agency." (p. 195.)

The defendants urge that, "to establish agency of express authority, it is not essential that it be proved by formal written instrument or special oral contract, but, like other questions of agency, it may be established by mutual conduct and the relations of the parties, or from the general nature and transactions of the surrounding circumstances." The principles for which defendants contend is good. The difficulty arises from the fact that defendants, in the case at bar, do not bring themselves within the principle. The defendants rely upon the statements of Conklin and the fact that they paid the interest to Conklin and that they afterwards received, either from Conklin or from the plaintiff, the canceled coupons. (Mrs. Randall testified that the canceled coupons were returned by the plaintiff to Mr. Randall.) The testimony, however, is undisputed that the plaintiff, a short time before each semiannual payment of interest became due, sent a notice to the Randalls in which it was said: "No one is authorized to collect for us. Make all remittances direct to The Pioneer Mortgage Company, Topeka, Kansas." It is undisputed that Conklin never had the coupons for collection, but that, when payments were made to him, he transmitted the money to plaintiffs. Whether Conklin ever received the money for the purpose of paying the plaintiff is not disclosed by the record. The testimony of the Hanover bank of New York shows that the Randall note and mortgage (of $2,000) was mailed to the Hanover bank by the Southwestern Farm Mortgage Company as part collateral to a note of $10,000 made by the Southwestern Farm Mortgage Company to the Hanover bank. These questions were asked of the Hanover bank and answers given:

"Q. Upon receipt of the Randall note by your bank state in what manner and how your bank held the same? A. The Wm. S. Randall note was held by us as collateral to the note of the Southwestern Farm Mortgage Company, of Emporia, Kansas.

"Q. If you have any correspondence relative to the proceeds of such note and payment thereof, and I refer to the $10,000 note, kindly set out copy thereof as part of this deposition. A. The proceeds of the note of the Southwestern Farm Mortgage Company for $10,000 were placed to their credit, and on May 16, 1919, we honored their draft for $10,000."

The Southwestern Farm Mortgage Company was a corporation of which Conklin was, at the time, president and general manager.

We find no testimony in the record showing that the Southwestern Farm Mortgage Company turned over or paid to Conklin the $1,500

with which he was supposed to pay plaintiff's mortgage. It was not within the province of the court to presume or infer that the Southwestern Farm Mortgage Company turned the money over to Conklin. Conklin absconded. He may have stolen this money from the Southwestern Farm Mortgage Company. This, however, is pure conjecture. Since the Hanover bank gave credit to the Southwestern Farm Mortgage Company for the $10,000, of which the Randall note represented $2,000, it is a fair and reasonable presumption that the Southwestern Farm Mortgage Company still retains the $1,500. Mrs. Randall testified that she received $476 from Conklin. And, since she executed the mortgage to the Southwestern Farm Mortgage Company, of which Conklin was manager, it is also the presumption that the manager of the Mortgage Company paid the $476 (not Conklin personally).

The fact that Conklin never held the interest coupons for collection and did not have possession of the note and mortgage was of itself sufficient to put the Randalls on inquiry as to his authority to collect for the plaintiff. Moreover, the plaintiff was exceedingly diligent in its efforts to prevent those to whom it loaned money from making the vital mistake disclosed in this instance. Twice each year it notified them of the interest payment and each time specifically stated that, "No one is authorized to collect for us. Make all remittances direct to The Pioneer Mortgage Company, Topeka, Kansas." The Randalls utterly disregarded these instructions. Under all of the circumstances, it is proper that the plaintiff should recover.

The judgment is reversed and remanded, with directions to enter judgment for the plaintiff.