## 12018

### COGSWELL v. CANNADY *ET AL.*

#### (133 S. E., 834)

1. PRINCIPAL AND AGENT.—Agent has no implied authority to receive payment for loan negotiated by him without possession of evidence of indebtedness.

2. PRINCIPAL AND AGENT.—Where payment to agent was alleged, agent's authority to receive payment must be shown.

3. PRINCIPAL AND AGENT.—Agent may have right to collect interest without like right to collect principal.

4. PRINCIPAL AND AGENT.—Although agency may not be established by declarations and conduct of alleged agent alone, such declarations and conduct are admissible as circumstances, in connection with other evidence, showing agency.

5. PRINCIPAL AND AGENT.—Agency may be proven by circumstantial as well as positive testimony.

6. APPEAL AND ERROR.—In an equity cause, burden rests on appellant to convince Supreme Court that Circuit Court committed error in his findings of fact.

7. PRINCIPAL AND AGENT.—Evidence in foreclosure action *held* sufficient to support finding that mortgagor was entitled to credit for payments made to alleged agent of mortgagee.

Before MEMMINGER, J., Charleston, June, 1925. Affirmed and remanded.

· Action by Julius Cogswell against Walter K. Cannady and others. Decree for defendants, and plaintiff .appeals.

*Mr. H. L. Erckmann,* for appellant, cites : *Similar case:* 132 S. C., 340. *Case distinguished:* 36 S. C., 10. Authority *of agent to collect interest not authority to collect principal:* 122 S. E., 511; 17 S. C., 139. *Party not responsible for acts of another in absence of agency:* 5 Howard, 51.

*Messrs. Hamer & Crosland* and *W. C. Martin,* for respondent, cite : *Cases distinguished:* 127 S. E., 562; 122 S. E., 511; 119 S. E., 829; 96 S. E., 484; 68 N. Y., 130. *Declarations of alleged agent admissible as surrounding circumstance showing agency:* 117 S. E., 594.

. June 29, 1926.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The plaintiff brought action against the defendant, Cannady, for foreclosure of a mortgage of real estate, security for payment of a bond for money. He alleged that no part of the principal debt had been paid. The administrators of one Kroeg were also made parties defendant.

The defendant, Cannady, in his answer, claimed that he had paid the sum of $1,400 on the principal of the debt, payment of which had been made to Kroeg, who had authority to collect same as plaintiff's agent.

The cause was referred to the Master, who found in favor of the plaintiff; the Master holding that, while Cannady had made the payments on the principal, as contended, Kroeg was not an authorized agent of the plaintiff for the purpose of collecting the principal.

From the findings of the Master, the defendant, Cannady, appealed to the Court of Common Pleas. His Honor, the late R. W. Memminger, Circuit Judge, concluded that, from the testimony, Cannady was entitled to the credits on the principal, and reversed the Master's finding of fact in that regard. From the decree of Judge Memminger, the plaintiff has appealed to this Court.

There is no need to recite all the grounds of appeal. The main question before this Court, as we view the cause, is this: Was there error on the part of the Circuit Judge in finding that the payments made by the defendant, Cannady, on the principal were made to an agent of the plaintiff, with power to collect such payments for the plaintiff?

The appellant's attorney, in a very able and plausible argument, relies upon the cases of *Bacot v. South Carolina Loan & Trust Co.,* 132 S. C., 340; 127 S. E., 562. *Morris v. Carlisle,* 128 S. C., 417; 122 S. E., 511. *Union Bank v. Cook,* 110 S. C., 99; 96 S. E., 484; and *Wilson v. Brabham,* 126 S. C., 273; 119 S. E., 829, as authorities for his position that the decree of the Circuit Court should be reversed.

The cases cited hold, without doubt, that because 1-3 an agent negotiates a loan, that fact alone gives him no implied authority to receive payment, unless he has possession of the evidence of the indebtedness. They further decide that payment is an affirmative defense, and that, where payment to agent is alleged, such agent's authority to receive payment must be shown. Again, these cases are authority for the view that an agent may have the right to collect the interest without like right to collect principal.

Following the law, so well established by the decisions referred to, the real issue in the cause is one of fact, not one of law. If Kroeg was the agent of plaintiff to collect principal on the debt, or if he was not agent at the time of the collections, but plaintiff ratified the agency, then the defendant is entitled to the credits. Conversely, if there was no proper agency on the part of Kroeg, or no ratification by plaintiff, then the defendant should not be allowed the credits.

While the plaintiff made the positive statement, in his testimony, that Kroeg (who apparently died insolvent) had no authority to collect principal for him, there was evidence of declarations and conduct on Kroeg's part to show the

agency. Too, there was some circumstantial evidence
tending to establish that fact. Then there was also evidence
going to show ratification on the part of the plaintiff of
Kroeg's acts.

It is true that agency may not be established by the
declarations and conduct of the alleged agent alone
but such declarations and conduct are admissible
as circumstances in connection with other evidence tending
to establish the agency. *Bass v. American Products, etc.,*
124 S. C., 346; 117 S. E., 594; 30 A. L. R., 168. *Watkins
v. Railroad Co.,* 97 S. C., 150; 81 S. E., 426. *Buist Co.
v. Lancaster Mercantile Co.,* 73 S. C., 48; 52 S. E., 789.
And agency may be proven by circumstantial, as well as pos-
itive, testimony. *Salley v. Parker,* 112 S. C., 109; 98 S. E.,
847.

The Judge had before him the testimony of the plaintiff,
a citizen of splendid repute. Opposing that testimony, he
had the evidence of other witnesses. One of these, Paul M.
McMillan, Esq., a gentleman of high standing, who had no
interest in the contest between plaintiff and Cannady, tes-
tified as to certain words and conduct of the plaintiff, tend-
ing to show ratification of the agency of the man to whom
Cannady had made his payments.

While the Master, well acquainted with all the witnesses,
thought that, under the circumstances, Cannady was not
entitled to credit as to the payments he made to Kroeg, yet
he admitted in his report that "the issue of Kroeg's agency
is sharply joined." The circuit Judge, to whom the wit-
nesses also were well known, felt "absolutely convinced"
contrary to the conclusions reached by the Master.

In an equity cause, the burden rests upon the appel-
lant to convince this Court that the Circuit Judge
committed error in his findings of fact. We do not
hesitate to say that, if the Circuit Judge had concurred in
the Master's findings, we would have been constrained to
sustain his position, for there was sufficient evidence for

such conclusions. On the other hand, there was sufficient evidence to support the view of the Circuit Judge that the Master was wrong in his conclusions he reached. We have not been convinced that the Circuit Judge erred in the findings he made.

The judgment of this Court is that the decree of the Circuit Court be, and the same is hereby, affirmed, and the cause is remanded to that Court for the purpose of carrying out such decree.

MR. CHIEF JUSTICE GARY, and MESSRS. JUSTICES WATTS and STABLER concur.

MR. JUSTICE COTHRAN: Being unable to concur in the opinion of Mr. Justice Blease I propose, respectfully, to state the grounds of my dissent:

This is an action to foreclose a mortgage, dated October 31, 1920, covering a certain house and lot in the city of Charleston, executed and delivered by the defendant W. K. Cannady to one Andrew A. Kroeg, now deceased, as security to a bond, dated the same day, due October 31, 1920 for $2,400, with interest at 7 per cent. per annum payable quarterly, on the 1st days of January, April, July, and October thereafter, and 10 per cent. attorney's fees. The bond and mortgage were assigned on the day they were executed to the plaintiff, J. E. Cogswell; the bond and an insurance policy, loss payable to J. E. Cogswell, were delivered by Kroeg to Cogswell on November 1, 1920; the mortgage was recorded on November 10, 1920, and at once delivered to Cogswell, who has retained all these papers from that day to this.

The defendant, Cannady, claims to have made to Kroeg two payments upon the principal of the bond, January 1, 1921, $700, and January 1, 1922, $700, and the evidence is conclusive that he did. He also paid to Kroeg the interest upon the bond, as called for, quarterly, from April 1, 1920, to January 1, 1922, which payments were remitted by

Kroeg to Cogswell. The two payments on principal, aggregating $1,400, were not remitted by Kroeg to Cogswell.

Kroeg died on Feburary 6, 1922, and thereafter Cannady paid regularly the quarterly installments of interest, directly to Cogswell, upon $1,000 ($17.50 per quarter), as if the principal had not been reduced by the two payments aggregating $1,400 ($2,400 less $1,400).

Cogswell knew nothing of the payments on the principal until after the death of Kroeg, and denied the claim of the defendant to credit therefor. Prior to the death of Kroeg, and after he had received the payments on principal from Cannady, Kroeg continued to remit to Cogswell the regular installments of interest as if the principal had remained at $2,400, $42 per quarter, April 1, 1921, July 1, 1921, October 1, 1921, and January 1, 1922.

The payments of interest made by Cannady after the death of Kroeg upon the basis of $1,000 principal, $17.50 per quarter, for the quarters May 1, 1922, July 1, 1922, October 1, 1922, January 1, 1923, April 1, 1923, July 1, 1923, and October 1, 1923, aggregating $122.50, were not accepted by Cogswell as the correct amounts, and were received by him "on account."

The plaintiff's action was commenced on November 5, 1923, he claiming $2,400 with interest at 7 per cent. from January 1, 1922, less the credits aggregating $122.50, and 10 per cent. attorney's fees. The defendant admitted the execution of the bond and mortgage and claimed credit for the two payments upon principal made by him to Kroeg, admitting his liability for $1,000 with interest from October 1, 1923, at 7 per cent.

The issue between the parties is simple: Whether the defendant is entitled to credit upon the principal for the two payments made by him to Kroeg.

The facts of the case in my opinion are equally clear. In the fall of 1919, Cannady obtained an option upon the house

and lot covered by the mortgage in question; as he states in his testimony:

"Had an option on the place, and went to Mr. Kroeg to examine the title and see if it was any good. I did not know Mr. Kroeg at the time, but Mr. Asbill from whom I bought told me that Mr. Kroeg was a good man to get. I hired him, and he said the title was all right, and asked me if I needed any money. I told him I was going to Branchville to borrow the money. He told me, 'Don't go—you can borrow the money just as cheap here'; that he had clients for whom he was handling money and why not get it here. About a week later Mr. Kroeg called me up and said to come and bring my wife and sign the bond and mortgage. We came, and he showed me this bond and mortgage. I saw Julius E. Cogswell's name on it. I asked Kroeg whom he was handling money for. He said for Mr. Cogswell. I asked to whom shall I make my payments. He said, 'You will have to make them through me for I am Mr. Cogswell's attorney.' (Objected to.) I asked if I could make payment on principal and reduce the interest. He said, 'Yes; but you will have to notify me 60 days in advance so that I can place this money so that Mr. Cogswell will not lose any interest.' * * * Mr. Kroeg told me I was borrowing this money from Col. Cogswell, and I saw the bond and mortgage with his name on them, so I knew through his attorney, Mr. Kroeg, that the bond and mortgage were assigned to him and were being held by him. When I made the payment on the principal I did not ask to see the bond and mortgage and did not know whether he held it or not."

Mr. Cogswell testified:

"The reason I made this loan is, Kroeg came to me and told me he had a good loan, and asked if I were interested. I took his data, looked up the property, made investigation about the mortgagor, and decided to make the loan. Kroeg attended to the legal end of it—the execution and examination of papers. He was only my attorney for the par-

ticular loan. * *   I understood Mr. Kroeg was trying to
raise money for his client.   The offering was good, and I
made the loan.   I did not pay for Mr. Kroeg's services,
presume Mr. Cannady did.   (The latter testified that he had
paid Kroeg $25 for examining the title and 1 per cent. upon
the loan for securing it)  * * *  I have had personal posses-
sion of bond and mortgage ever since it was delivered
to me after recording.  * * *  Mr. Kroeg was not author-
ized by me in any way to collect on accunt of the principal;
he was not even authorized to collect the interest, but I re-
ceived the interest from him that Mr. Cannady sent to me by
him."

In reference to what transpired after the death of Kroeg,
Mr. Cogswell testified:

"Some time in April, 1922, when I found that Mr. Can-
nady disputed the amount of the claim after Mr. Kroeg's
death, and claimed that he had paid $1,400 to Kroeg, I went
to Kroeg's estate to find out if they had the money and found
a terrible mix-up there.   I asked Mr. McMillan, the adminis-
trator, if he had any money which had been paid to Kroeg to
be given to me, and I learned that he (Kroeg) had received
moneys from Mr. Cannady but had never given it to me."

Mr. Witsell, one of the administrators, testified that Mr.
Cannady filed a claim against the estate of Kroeg for the
$1,400 paid Kroeg by him.

Mr. McMillan's version of the interview with Mr. Cogs-
well after the death of Kroeg was as follows:

"Mr. Cogswell saw me about this claim, about two
months after Kroeg's death.   He asked me if the books of
the estate were being kept.   I said, 'Yes' He asked me to
show him all of the books of the estate.   I told him, 'I will not
do that,' but whatever books refer to the claim.   He said he
had a credit to the extent of $1,400," and threatened a
receiver.

The foregoing is practically, in substance, the entire
evidence in the case.

The issues of law and fact were referred to H. W. Mitchell, Esq., Master, who filed a report finding that Kroeg was the agent of Cannady in receiving the payments on principal, that he failed to pay over that money to Cogswell, and that Cannady was not entitled to credit for the payments. He recommended foreclosure for the full amount claimed by Cogswell.

Upon exceptions to this report, his Honor, Judge Memminger, reversed the findings and conclusions of the Master, allowing foreclosure for only the balance due on the bond after crediting the defendant with the payaments made to Kroeg on principal. From this decree the plaintiff has appealed, upon exceptions which fairly raise the questions hereinafter discussed.

It seems to me that the real questions in the case is, not so much the issue whether Kroeg was the agent of Cannady or of Cogswell, but whether under the circumstances Cannady was justified in making the payments to Kroeg, the burden of establising which is upon Cannady. This he may show by proving: (1) That Kroeg was the lawfully authorized agent of Cogswell to receive the payments; or (2) that Cogswell is estopped to deny the fact that Kroeg was his agent for this purpose; or (3) that, after the unauthorized act of Kroeg in receiving the payments, Cogswell ratified this act.

I do not think that there is a particle of evidence tending to sustain any one of these propositions, and that, if there should be, the overwhelming evidence is against all of them. Conceding for the moment what is assumed in the opinion of Mr. Justice Blease, that the sole issue is one of fact, whether Kroeg was the agent of Cannady or of Cogswell, in the receipt of the payments on principal, upon which issue there is disagreement between the Master and the Circuit Judge, I have this to say in reference to the province of this Court, in an equity case, under these circumstances. The

25—S. C.—135.

Constitution, Art. 5, § 4, provides, in reference to the jurisdiction of the Supreme Court:

"And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall review the findings of fact as well as the law."

While it is true that in every appeal, whether at law or in equity, the burden is upon the appellant to show, not only error in the judgment below, but prejudicial error, I know of no law or precedent which justifies this Court in abdicating its prerogative and in avoiding its mandatory duty " to review the findings of fact as well as the law," in a chancery case, by being influenced in the slightest degree by the findings of the Circuit Judge. The appellate function cannot be hampered by the result which is the subject of appeal, except so far only as the burden above stated is concerned. In *Brown v. Newell,* 64 S. C., 27; 41 S. E., 835; the Court said, after quoting the above constitutional provision:

"The duty of this Court, therefore, is to examine carefully the testimony to ascertain that the findings of fact by the Circuit Judge are warranted thereby."

And in a long list of cases beginning with *Finley v. Cartwright,* 55 S. C., 198; 33 S. E., 359; it is held:

"This Court may reverse a finding of fact by the Circuit Court, when the appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court."

The learned Justice, I submit with deference, misapprehends the rule when he announces:

"We do not hesitate to say that, if the Circuit Judge had concurred in the Master's findings, we would have been constrained to sustain his position, for there was [would have been?] sufficient evidence for such conclusions."

In other words, the decision of the Circuit Judge, from which the appeal is taken, should be sustained if there be sufficient evidence to sustain it, regardless of the injunction

above quoted, "to examine carefully the testimony (on both sides, I interpolate), to ascertain that the findings of fact by the Circuit Judge are warranted thereby," and that his decision may be reversed if it be found opposed to the preponderance of the evidence.

Now, considering the evidence upon the several alternative propositions incumbent upon the mortgagor to establish:

(1) That Kroeg was the lawfully authorized agent of Cogswell to receive the payments on principal.

I think that, in the matter of procuring the loan, Kroeg was in reality the agent of both parties. Cannady had "hired" Kroeg to investigate the title, and, after this duty had been performed, a new relation sprang up between the two; Cannady needed the money with which to comply with his option on the house and lot; Kroeg had financial connections which he offered to employ in procuring the money for Cannady; Cannady accepted his overtures and paid Kroeg 1 per cent. upon the loan for procuring it; the papers, bond, and mortgage were prepared by Kroeg and executed in his office. Cogswell had money to lend and engaged Kroeg as his attorney to perfect the loan, sending him a check to replace the advance made by Kroeg of the amount of the loan, which Kroeg had paid to Cannady, less his charge of $25 and $24 (1 per cent.).

But this does not settle the great question in the case, whether Kroeg was the authorized agent of Cogswell to receive the payments on principal. The only thing in the case that even tends to establish this fact is the alleged declaration, of Kroeg, testified to by Cannady while the papers were being executed, that he was authorized to receive payments made by Cannady; the declaration of a man who afterwards received the payments, concealed them from Cogswell by continuing to remit interest regularly as if no payment had been made, never accounted for a dollar of them, died with an account unsettled, and

escaped a criminal prosecution for breach of trust or for, obtaining money under false pretenses, a declaration compatible with his purpose to misappropriate the money, and in furtherance of it. Tell me that such testimony is evidence of his authority to receive the payments?

It is a pity that in two comparatively recent cases the Court has relaxed the salutary rule that the declarations of one who professes to be the agent of another are altogether inadmissible. I refer to the cases of *Watkins v. R. Co.,* 97 S. C., 148; 81 S. E., 426; where the Court said:

"While this [the declaration of the professed agent] was not sufficient to prove agency, it was a circumstance, and, if connected with other evidence, could establish the fact of agency, it would have been competent."

*And of Bass v. American Co.,* 124 S. C., 346; 117 S. E., 594; 30 A. L. R., 168; where it said:

"While agency may not be established by the declarations and conduct of the alleged agent alone, such declarations and conduct may be admissible as circumstances in connection with other evidence tending to establish agency"— citing the *Watkins Case.*

It is significant that, in the *Watkins Case,* the real ground for the admission of the testimony was that it had not been objected to; and, in the *Bass Case,* the case turned upon the issue of implied agency or agency by estoppel.

In *Smith v. Asbell,* 2 Strob., 141, it was distinctly held that such testimony was inadmissible.

In *Renneker v. Warren,* 17 S. C., 139, it was held· quoting syllabus:

"Declarations made by one professing to be an agent are not admissible in evidence against the alleged principal until the agency is established by proof."

In the opinion by Chief Justice Simpson occurs this language:

"The declarations or acts of an agent within the scope of his agency are the declarations and acts of the principal.

This is familiar law. But before it can have application in a special case the agency must be established, and we do not think that this can be done by the declarations of the agent himself. He would be a competent witness if produced, but his declarations made out of Court cannot be substituted in his stead."

*In New England Co. v. Baxley,* 44 S. C., 81; 21 S. E., 444, 885, in an opinion by Chief Justice McIver, it is said:

"We think it is too clear to admit of argument that the fact of agency cannot be proved by the declarations of the alleged agents; for, while it is true that, after the fact of the agency had been established by evidence aliunde, the acts and declarations of the agent within the scope of his agency are binding on the principal; yet it is well settled that the declarations or acts of the alleged agent are not competent to prove the fact of agency."

In *Seneca Co. v. Crenshaw,* 89 S. C., 470; 71 S. E., 1081, the Court said:

"Agency cannot be proved by the mere declaration of the person claiming to be agent."

See *Woodward v. Cave,* 79 S. C., 579; 61 S. E., 82; *Electric Co. v. R. Co.,* 72 S. C., 251; 51 S. E., 695; 110 Am. St. Rep., 600.

But, if the relaxation of the rule as declared in the *Watkins* and *Bass Cases* should still prevail, it is not possible to point out any evidence corroborating the declaration, and tending to establish the agency of Kroeg to receive payments upon the principal, outside of the bare fact that he received them, a fact which is entirely consistent with the theory that it was but the consummation of a plan, first to deceive Cannady into making the payments, then to deceive Cogswell by concealing the payments, and then to appropriate the money to his own uses. Can the declaration simply of an artist of this description outweigh the testimony of the plaintiff, "a citizen of splendid repute," who testifies most

positively that he had never given Kroeg authority to collect the principal or any part of it?

The evidence shows that 'for a period of nearly two years Cogswell had received regularly from Kroeg the quarterly installments of interest; those from May 7, 1920, to January 1, 1921, were based upon the original face of the bond, $2,400; those from April 1, 1921, to January 1, 1922, upon the bond as reduced by the first payment of $700, but which Kroeg supplemented with a check of his own, making it appear that no payment had been made. If the question had arisen as to the interest collected by Kroeg, Cogswell by his ratification would have been obliged to account for it.

But the question has arisen as to the collection of the payments upon the principal, not the interest, and the rule is thoroughly settled that authority of an agent to collect interest does not imply authority to collect the principal or any part of it.

In *Bacot v. S. C. Loan Co.,* 132 S. C., 340; 127. S. E., 562; it is said:

"The fact that an agent is authorized to receive installments of interest as they become due on a note or other obligation does not give him implied power to collect the principal."

. So that, outside of the declaration of Kroeg that he was the attorney of Cogswell and that payments should be made to him, there is not the slightest evidence that Kroeg was authorized to receive payment of any part of the principal; the only admissible evidence in the case upon that point is that of Cogswell, who declares positively that he had never given Kroeg any such authority, and there is no circumstance tending to the contrary, as there might have been if Cogswell had even upon any occasion recognized Kroeg's authority to do so, or had the slightest knowledge in the case at bar that he had done so.

(2) That Cogswell is estopped to deny the fact that Kroeg was his agent to receive the payments on principal.

We have only to compare the situation and conduct of the respective parties to conclude which of them was most free from the imputation of blame, which might amount to estoppel. If Cogswell had done anything to induce Cannady to think that Kroeg had authority to collect the principal of the bond, had by act or word led him to change his situation to his prejudice, he should be held estopped to deny the authority of Kroeg. These are the facts: After the loan had been effected, the bond and the insurance policy were turned over to Cogswell; the mortgage had to be recorded, and, as soon as that was done, it was turned over to Cogswell, who has retained all three papers ever since. Kroeg had possession of none of them from that day. Cogswell certainly had the right to the custody of his own papers, and his transactions were confined to the receipt of the installments of interest which Cannady had paid to Kroeg. He was not called upon to notify Cannady that he had the papers. Cannady swears that he saw the assignment upon the back of the bond and mortgage; that he knew that the bond and mortgage belonged to Cogswell; that Cogswell had loaned the money; that the insurance policy was made payable to him; and that Cogswell had the papers.

Cannady relied upon the representation of Kroeg that he was the one to whom payments should be made. Cogswell did nothing to induce this representation, and never knew of it. Cannady, in making the payments, made no further inquiry into Kroeg's authority, although they were both in the same city, in easy communication, and Cogswell was register of mesne conveyances, a public office, known of all men. Cannady, although he admits that he knew that Cogswell had the papers, made no request for their production.

As to the payments to a supposed or alleged agent when the papers are in the possession of the mortgagee, the rule appears to be this: Under such circumstances there is no implied authority in the supposed agent to accept a payment;

that when a debtor pays to one other than the holder of the paper, who has not possession of it, in order to validate such payment, the burden is upon him to show authority in such person to receive the payment, which of course may be done expressly or by implication.

In *Lumber Co. v. Littlejohn*, 31 Neb., 606; 48 N. W., 476; the syllabus by the Court is:

"A party who pays money to another to be applied on a note which such person has not in his possession assumes the burden of proof to show the authority of the person to whom payment is made to receive the money."

"Payment of negotiable note secured by mortgage to the original mortgagee not in possession of the note or mortgage, is not binding on assignee before maturity, unless he had authorized such payment." *Scott v. Taylor*, 63 Fla., 612; 58 So., 30.

"Payment of a negotiable note, secured by a mortgage, * * * to the mortgagee, not in possession of the note and mortgage, is not binding upon an assignee thereof before maturity, who had possession of the papers at the time of payment, unless he had expressly or impliedly authorized such payment." *Chase v. Commerce Trust Co.*, 101 Okl., 182; 224 P., 148.

In *Murphy v. Barnard*, 162 Mass. 72; 38 N. E., 29; 44 Am. St. Rep., 340, the syllabus is:

"Payments made to a mortgagee after he has assigned the mortgage are at the peril of the mortgagor, and he is not entitled to be credited therewith, if the mortgagee did not, at the time, produce the original negotiable notes which the mortgage was given to secure, though such notes were in fact in his possession in another city, if he was not authorized to receive such payment, and it was not induced by the fact of such possession."

"When a mortgagee assigns the mortgage and a negotiable note secured thereby, before maturity, and for a valuable consideration, and the mortgagor, without knowledge

of such assignment, pays the mortgage debt to the administrator of the original mortgagee without requiring the production of the note and mortgage, such payment is no defense to foreclosure of the mortgage by the assignee." *Williams v. Keyes,* 90 Mich. 290; 51 N. W., 520; 30 Am. St. Rep., 438.

"Where a note secured by mortgage is assigned by a mortgagee, and payment by the mortgagor, without knowledge of the assignment, is made to one whom he believes by such agent, it is not binding on the assignee of the mortgage is due, and without production of the note or mortgage by such agents, it is not binding on the assignee of the mortgage, where neither the original mortgagee nor the agent to whom payment is made is shown to be the agent of such assignee." *Dodge v. Birkenfeld,* 20 Mont. 115; 49 P., 590.

The Court said:

"It was a most incautious act for him to pay them the amount of the note not yet due, without demanding of and receiving at their hands the note itself, all on the assumption that they were the agents of the owners of the papers."

"If money be due on a written security, it is the duty of the debtor, if he pays to an agent, to see that the person to whom he pays it is in possession of the security. For though the money may have been advanced through the medium of the agent, yet, if the security do not remain in his possession, a payment to him will not discharge the debtor." *Smith v. Kidd,* 68 N. Y., 130; 23 Am. Rep., 157.

In *Lane v. Duchac,* 73 Wis., 646; 41 N. W., 962, it was held that, where a mortgagor pays the amount of the debt to one who he knows has not possession of the papers, and who undertakes merely to procure a release from the mortgagee, the mortgagor assumes the risks of the release being procured in that manner.

"A mortgagor who pays interest or principal upon a mortgage to any one other than the mortgagee himself, when the person receiving the moneys has not in his posses-

sion the obligations, does so at his peril. In order to hold the principal to such payment he must be prepared to prove express authority." *Crane v. Evans,* 2 How. Prac. ([N. S.] N. Y.) 310.

"Payment to the original holder of a negotiable note, secured by a mortgage, of the amount due, is at the risk of the one making it, unless it is authorized by the true owner or justified by possession of the securities." *Koen v. Miller,* 105 Ark., 152; 150 S. W., 411.

"Where mortgagors paid the principal and interest to the broker who negotiated the loan, and the broker had no express authority to receive payment, and did not have the mortgage note or mortgage in his possession when the payment was made, such a payment did not operate as a satisfaction of the mortgage; the broker having no implied authority to receive payment." *Thacker v. Medbury,* 33 R. I., 37; 80 A., 186.

"Where a debtor owing money on a written instrument pays another as creditor's agent, it is debtor's duty at his peril to see that the one paid is in the possession of the obligation, or if not so in possession, debtor must show that the person to whom he pays has special authority to receive payment." *Sioux City v. Lovrien,* 198 Iowa, 296; 197 N. W., 914.

"The lack of possession of a note and mortgage is sufficient to put the debtor on inquiry as to the authority of the alleged agent to receive payment." *Pioneer Co. v. Randall,* 113 Kan., 62; 213 P., 668.

"Where the assignee of a note and mortgage permits the original mortgagee, without intrusting him with the note, to collect the interest as agent, and the mortgagor, ignorant of the assignment, pays the agent both principal and interest without compelling a production of the instruments, he is not entitled to a cancellation." *Biggerstaff v. Marston,* 161 Mass., 101; 36 N. E., 785.

"It is the duty of a person paying a note or bond secured

by mortgage to require the production and cancellation of these instruments as a condition of payment, and a payment without requiring the production and cancellation of these instruments is at the risk of the person making the same. In order that such payment be effectual, the burden is on him to show that he paid the true owner or his agent having express or implied authority to receive the payment." *Assets Co. v. Clark,* 205 N. Y., 105; 98 N. E., 457; 41 L. R. A. (N. S.) 462, note.

In *Hoffmaster v. Black,* 78 Ohio St., 1, 84 N. E., 423; 21 L. R. A. (N. S.), 52; 125 Am. St. Rep., 697; 14 Ann. Cas., 877, it is pertinently said:

"When the defendants made payments to Hood [the alleged agent] without requiring the production of the securities, it was no more than if they had intrusted such payment to a messenger boy. That which reached the plaintiff was good payment. That which did not reach the plaintiff was at their own risk."

In *Tappan v. Morseman,* 18 Iowa, 499, in an opinion by Judge Dillon, it is said:

"If a debtor, owing money on a written security, pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the security. If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the security."

In *Biggerstaff v. Marston,* 161 Mass., 101; 36 N. E., 785, it is held that:

"Where the assignee of a note and mortgage permits the original mortgagee, without intrusting him with the note, to collect the interest as agent, and the mortgagor, ignorant of the assignment, pays the agent both principal and interest without compelling a production of the instruments, he is not entitled to a cancellation."

"Payment of a mortgage debt to the broker who negotiated the loan, after he had parted with possession of the notes and mortgage, does not relieve the mortgagor from liability thereon, and is wholly immaterial that the owner of the mortgage has other transactions with the broker and has money desposited with him." *Viskocil v. Doktor,* 27 Ill. App., 232.

"Payment of the principal of a mortgage to one who assumed to be, but was not, the mortgagee's agent, and had not possession of the security, is not a discharge of the bond and mortgage, although interest on that and other mortgages had in several cases been paid through him." *Cox v. Cutter,* 28 N. J. Eq., 13.

It is held by some authorities that the mere fact that the supposed agent is not in possession of the securities when the payment is made is conclusive upon the defense of payment made by the debtor; but the better rule is that the fact is one to be submitted to the triers of fact as a circumstance against the authority of the supposed agent, the burden being on the debtor to establish the authorization.

*In Williams & Co. v. Paysinger,* 15 S. C., 171, the Court said:

" 'On making a payment upon a mortgage, the debtor should always require the production of the note or bond secured by it, otherwise it may turn out that this evidence of the debt has been assigned.' 2 Jones on Mort., § 956. 'Where a recorded mortgage is discharged by a person other than the mortgagee, the person paying the money, and all subsequent purchasers as well, are bound to inquire what authority he had to discharge it, and are chargeable with the notice of such facts as by proper inquiry might have been ascertained." 2 Jones on Mort., § 959; *Swarthout v. Curtis,* 5 N. Y., 301; [55 Am. Dec. 345]. Paysinger was not the mortgagee. There was enough to put Sanders on the inquiry, and he must be held to have had

notice of everything that due diligence would have discovered."

Nowwhere is the law more clearly stated than in 1 Jones Mtg. (6th Ed.) § 964:

"In making payments to an agent, the mortgage debtor should be assured of his continued authority to act for the owner of the mortgage; and such assurance of this as may be derived from his possession of the mortgage note or bond and indorsement thereon of the payment, would be omitted only through great negligence. Authority of an agent to receive interest or principal on a mortgage cannot be inferred from the fact that the agent had collected and paid over to the mortgagee interest on other mortgages. Even authority to collect the interest upon a mortgage does not afford ground for inferring authority to collect the principal, when the agent is not intrusted with the possession of the securities. The mortgagor is bound to know the extent of the agent's authority. If he pays the principal to an agent, he must be prepared to prove express authority. He pays to an agent at his peril. The agent's own declarations as to his agency cannot be accepted. The rule has been generally adhered to in the adjudged cases, that the possession of the securities by the agent is the indispensable evidence of his authority to collect the principal."

(3) That after the unauthorized act of Kroeg in receiving the payments on principal Cogswell ratified his act.

The only circumstance that has been called to my attention which bears the least semblance to a ratification, is the conduct of Cogswell after the death of Kroeg and after he had learned, through Cannady that the payments on principal had been made. It appears, as above set forth, that he interviewed Mr. McMillan, one of the administrators, concerning the matter. He claimed to have a credit to the extent of $1,400 on the books of Kroeg and wished to see them. That is all. The Circuit Judge declares:

"When Kroeg died Cogswell went right to his represen-

tive and claimed he had a credit against Kroeg for the $1,-400 which Cannady had paid to Kroeg, under notice, but which Kroeg had not paid him. He then and there recognized Kroeg as his agent. He affirmed the agency of Kroeg, that money paid to Kroeg was money paid to him His claim would have been against Cannady only, unless he acquiesced in the idea that a payment to Kroeg was a payment to him."

Cogswell filed no claim against the estate of Kroeg, but Cannady did. Cannady's conduct in this particular receives gentle treatment at the hands of the Circuit Judge. It comes a great deal nearer to an acknowledgment that he had paid Kroeg at his own risk, than Cogswell's; that Kroeg was his agent to receive the payment. The observations of the Circuit Judge, as to Cannady's conduct in filing a claim, with the names changed, may apply to Cogswell's. He says:

"The fact that Cannady filed claim against the estate of Kroeg is not inconsistent with his contention that agency existed between Kroeg and Cogswell; for one can make a demand on the agent without waiving any rights against the principal, and Cannady was merely trying to aid Cogswell in collecting his money by filing a claim."

Most assuredly, if Cannady had paid money to Kroeg, which he was not authorized to receive, for Cogswell, Kroeg would have occupied the position of a trustee for Cogswell; Cogswell's claim against Kroeg for an accounting of the trust, based upon his receipt of money for his benefit which he was without authority to receive, could hardly be said to have been based upon the relation of principal and agent. If Kroeg had left the $1,400 in a sealed package, for Cogswell, he certainly would have claimed it; and then, by accepting it, he would have ratified the agency; but it certainly was no ratification to ask about it.

I do not see how it is possible to distinguish this case from the cases of *Bacot v. Trust Co.* 132 S. C., 340; 127

S. E., 562; and *Morris v. Carlisle,* 128 S. C., 417·; 122 S. E., 511.

, I am of opinion therefore that the judgment should be. reversed.