Mr. Justice STRONG
 

 delivered the opinion of the cóurt.
 

 In considering the first assignment of error—that is to say, the question whether on the trial the deposition of' Mrs. Clough was rightly admitted in support of her claim, it is tinnecessary to- inquire whose will bé 'the damages, if , any, which may be recovered—whether they will belong to the husbamd or to the-wife: The competency of the witness, or her incompetencj7, must b¿ determined bythe statutes of Wisconsin, where the case \yas tried. The act of Congress
 
 *538
 
 of July 6th, 1862, has enacted that “ the laws of the State in which the court shall be held shall be the rules of decision as to the competency of witnesses in the courts of the United States, in trials at common law, in equity, and admiralty.” And the statutes of Wisconsin
 
 *
 
 very plainly declare that the wife is a competent witness for herself in such a case as this. The first assignment of error cannot, therefore, be sustained.
 

 The second, third, and fourth assignments present substantially the same question, and they may be considered together. After direct testimony had been given by Mrs. Clough that the plaintiffs were married on the 24th day of December, 1845, the defendants proposed to prove by other witnesses that the plaintiffs had not lived and cohabited together as husband and wife since December, 1869; that it was commonly reputed that they had not so lived together, and that there was a common reputation .that Carlos Clough was living and cohabiting with another woman. This proof the court refused to receive. It was offered for two avowed purposes—one in mitigation of damages, and the other to disprove the fact alleged in the declaration that the plaintiffs were husband and wife. But how, if received, it could have tended to mitigate damages has not been made plain to us. The suit, as the case shows, was for an injury inflicted upon the wife. Surely the injury was the same whether the husband lived'with her or not. And the evidence was inadmissible for the other purpose for which it was offered. It is true, ordinarily, the general issue in an action of trespass-on the case imposes upon the plaintiff the necessity of proving all the material facts averred in the declaration, but the ability of the plaintiffs to sue is not a fact directly averred, and, therefore, it cannot be disproved under a plea of not guilty. In fact it is not put in issue by such a plea. The defence that the plaintiffs suing as husband and wife are not married goes to the form of the writ, rather than to the
 
 *539
 
 cause of action, and it should, therefore, be pleaded in abatement, and not in bar. Thus, in.Chitty’s Pleadings
 
 *
 
 it is laid down as a proper plea in abatement to the form of the writ that the plaintiffs or defendants suing, or being sued, as husband and wife, are not married. And in Stephens on Pleading,
 
 †
 
 it is said “the plea of not guilty in trespass on the case operates as a denial of the breach of duty, or wrongful act alleged to have been committed by the defendant. . . . But not guilty will apply to no other defence than a denial of the wrongful act.” The general issue at length is that the defendant is not guilty of the grievances laid to his charge, in manner and form as the said plaintiff hath above thereof complained against him, and of this he puts himself upon the country, &c.
 
 ‡
 
 While, since the time of Lord Mansfield, the scope of this issue has been much enlarged, it has not been supposed to extend to a denial of the ability of the plaintiff to sue. In
 
 Combs
 
 v.
 
 Williams,
 

 §
 

 it was ruled that in the trial of an action upon a promise to a feme sole, brought by her husband and herself after marriage, it is not competent for the defendant under the general issue to prove the illegality of the marriage, such matter being wholly in abatement. True, this was in au action of assumpsit, but the general issue is as broad, in such a case, as it is in case for a tort. And if this were not so, even if in the state of the pleadings the.defendants were at liberty to pi’ove that the plaintiffs were not husband and wife, they could not prove it by such evidence as that which tliéy offered. Cohabitation as husband and wife may tend to prove marriage, but non-cohabitation has not been accepted as disproving the existence of the márital relation in face of uncontradicted evidence that a marriage in fact had taken place.
 

 The fifth assignment of error is without any foundation. It would be very extraordinary were we to hold that the plaintiff had settled and discharged her claim upon the de
 
 *540
 
 feudants without any intention or understanding on her part to give it up.
 

 . The next assignment-is more important. The accident by which the plaintiff was injured occurred at Read’s Landing, in Minnesota, on the 30th day of September, 1869, about two o’clock in the afternoon. Two days afterwarus, as the boat approached Davenport, in the State of Iowa, Mrs. Clough, the witness, had a conversation with the captain, in which he made some statements respecting the accident, and these statements the court allowed to be-given in evidence against the defendants. In this we think there was error. Declarations of an ageut are, doubtless, in some cases, admissible against his principal, but only so far as he had authority to make them, and authority to make them is not necessarily to be inferred from power given to do certain acts. A captain.of a passenger steamer is empowered to receive passengers on board, but it is not necessary to this power that he be authorized to admit that either his principal, or any servant of his principal, has been guilty of negligence in receiving passengers. There is no necessary connection between the admission and the act. It is not needful the captain should have such power to enable him to conduct the business intrusted to him, to wit, the reception of passengers, and, hence, his possession of the power to make such admissions affecting his principals is not to be inferred from his employment.
 
 *
 
 It is true that whatever 'the' agent does in the lawful prosecution of the business intrusted to him, is the act of the principal, and the rule is well stated by Mr. Justice Story,
 
 †
 
 that “where the acts of the agent will bind the principal,-there his representations,' declarations, and admissions respecting the subject-matter will also bind him,
 
 if made at the same time, and constituting part of the res gestee.”
 
 A close attention to this rule, which is of universal'acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied,’qualified, or
 
 *541
 
 explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by-an isolated conversation held, or an isolated act done at. a later period.
 
 *
 
 The reason is that the agent to do the act is not authorized to narrate what he had done or how he had done it, and his declaration is no part of the “
 
 res gestee.”
 

 Applying this rule to the present case, how does it stand ? The thing of which the plaintiffs complain was.negligence, on the 30th of September — a fault in providing for Mrs. Clough’s embarkation on the steamer. That, and that alone, caused the inju'ry she sustained. -That and nothing else was the “
 
 res gestae.”
 
 What the captain of the boat said of the transaction two days afterwards was, therefore, but a narrative of a past occurrence, and for that reason it could not-affect his principals. It had no tendency tó determine the nature, quality, or character of the act done, or left undone, and it is not, therefore, within the rule stated by Judge. Story. That rule has beeu recognized
 
 “in totidem verbis”
 
 in Wisconsin by Chief Justice Dixon, in delivering the opinion of the court in
 
 The Milwaukee and Mississippi Railroad Company
 
 v. Finney.
 
 †
 
 And there, is nothing in any of the decisions cited by the defendants in error inconsistent with such a rule. The case of
 
 The Enterprise,
 
 cited from 2d Curtis, was a suit in admiralty for subtraction of wages, and the declarations of-the master respecting the contract with the seamen were admitted, though not a part of the
 
 res gestee.
 
 But the decision was rested upon the ground that the admiralty rule is different from- the rule at common law. Thd case of
 
 Burnside
 
 v.
 
 The Grand Trunk Railroad Company,
 
 cited from 47 New Hampshire, simply decides that the statements of the general freight agent as to the condition of goods delivered to him for transportation made while the goods are still in transit-, or while the duty of the carrier continues, are admissible in evidence against the company. This was a case of contract riot executed, and, while it remained unexecuted, the-agent had power to vary it; had, in fact, com
 
 *542
 
 píete control over it. The transaction was still depending, and the agent was still in the execution of an act which was within the scope of his authority. But in the present case the declarations admitted were not made in the transaction of which the plaintiffs complain, or while it was pending. They refer to nothing present. They are only a history of the past.
 

 It is argued they were made before the voyage upon which Mrs. Clough entered was completed. True, they were, but they were not the less mere narration. The accident was past. The injury to Mrs. Clough was complete. The only wrong she sustained, if any, had been consummated two days before. We cannot think the fact that she had not arrived at her port of destination is at all material. If she had left the steamer before the declarations were made it is not claimed, as certainly it could not be, that they were admissible. Now, suppose two persons were injured by the negligence which the plaintiffs assert, and one of them had left the boat before the captain’s declarations were made, clearly they would have been inadmissible in favor of the person whose voyage had been completed. This is not denied. Yet the connection between them and the accident would be as close in that case as in this. Can they be admissible in the one case and not in the other? Assuredly not. We must hold, therefore, that there was error in admitting in evidence the statement of the captain of the' steamboat made two days after the wrong was done of which the plaintiffs complain.
 

 The last assignment of error is the rejection of the deposition of Turner. Of this it is sufficient to say that we have not before us either the deposition or any statement of what it tended to prove. We cannot know, therefore, that it was of any importance, or that, if it had been admitted, it could have had any influence upon the verdict. A party who complains of the rejection of evidence must show that he was injured by the rejection. His bill of exceptions must make' it appear that if it had been admitted it might have led the ■
 
 *543
 
 jury to a different verdict. This must be understood as the practice in. this court, and such is the requirement of our twenty-first rule. By that rule it is ordered that when the error assigned is to the admission or rejection of evidence, the specification shall quote’ the full substance of the evidence offered, or copy the offer as stated in the bill of exceptions. This is to enable the court to see whether the evidence offered was material, for it would be idle to reverse a judgment for the admission or rejection of evidence, that could have had no effect upon the verdict.
 

 But for the reception of-the' statement made by the captain, shortly before the arrival of the boat at Davenport, the judgment must be reversed.
 

 Judgment reversed, and a
 

 Venire de novo awarped.
 

 *
 

 Vol. i, page 392.
 

 ‡
 

 1 Chitty’s Pleading, 432.
 

 †
 

 Page 160.
 

 §
 

 15 Massachusetts, 243.
 

 *
 

 1 Taylor on Evidence, § 541.
 

 †
 

 Story on Agency, § 184.
 

 *
 

 1 Taylor on Evidence, § 526.
 

 †
 

 10 Wisconsin, 388.