## RICE *v.* MARTIN & CLARK and others, Intervenors.

*(Circuit Court, D. Nevada.* August 15, 1881.)

1. **WITNESS—OTHER PARTY TO TRANSACTION DEAD.**

    All disqualifications on the ground of interest in the event of the suit are abolished by section 858 of the Revised Statutes, except only where an executor, administrator, or guardian is a party for or against whom judgment may be rendered, and it is sought to prove, by one of the parties, some transaction with or statement by the testator, intestate, or ward.

2. **PARTNERSHIP.**

    Under the facts of this case, *held*, that no partnership existed between Rice & Norton at the time this suit was commenced.

Suit in Equity.

*Lewis & Deal*, for plaintiff.

*C. H. Belknap*, for defendants.

*C. S. Variran*, for intervenors.

HILLYER, D. J. The plaintiff claims to have been a partner of B. B. Norton, in his life-time, in a band of cattle known as the "Figure 2 cattle," and in a ranch known as the "Duck Flat ranch." The main question is whether he was so or not. Incidental to this is a question of statutory construction, involving the law of Nevada, and section 858 of the Revised Statutes of the United States. The question is whether Rice is a competent witness as to transactions between himself and Norton, Norton being dead.

Section 377 of the Practice Act of Nevada abolishes all disqualifications of a witness "by reason of his interest in the event of the action or proceeding, as a party thereto, or otherwise." 1 Comp. Laws, § 1438. And section 379 provides that "no person shall be allowed to testify *under the provisions of section 377*, when the other party to the transaction is dead." As amended, St. 1879, p. 49.

Section 858 of the Revised Statutes of the United States enacts that "in the courts of the United States no witness shall be excluded * * * in any civil action because he is a party to or interested in the issue tried. * * * In all other respects the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States."

These are the provisions of law in force, and the defendants object to the testimony of Rice on the ground that Norton, the other party to the transaction, is dead. At common law a witness was disqualified who was either a party to the action or interested in the event of the suit. Section 377 removed that disqualification. Under that section every person directly interested in the suit, as a party or otherwise, is competent. The object of the section was to enlarge the competency of witnesses—to increase the number of cases in which a witness could testify; and it had that effect. Then follows the limitation in section 379: "No person shall be allowed to testify *under the provisions of section 377* \* \* \*." The only persons rendered competent by section 377 were, for our purposes, persons who before had been disqualified by reason of interest in the event of the action or proceeding. It must be some person rendered competent by section 377, not so before, upon whom the restriction in section 379 must be placed. In other words, the witness disqualified by section 379 must be some person who had an interest in the event of the action. It could not have been the intention of the legislature to narrow the competency of witnesses, where, before the adoption of section 377, they had been competent. The reference to that section in section 379 forbids that idea. "Party to the transaction" must, therefore, be referred to a person who had some interest in the event of the action as a party thereto or otherwise; and section 379 must be read as if the language were, "when the other party (being a person who has an interest in the event of the action or proceeding as a party thereto, or otherwise) to the transaction is dead." But by section 858 of the Revised Statutes of the United States no person is to be excluded because he is a party to or interested in the issue tried, with but one proviso, viz.:

"That in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."

This proviso does not embrace this case.

The state statutes are to be rules of decision only in cases where the constitution, treaties, and statutes of the United States do not otherwise provide. When they do otherwise provide, the state laws cease to be of force. To illustrate by so much as fits this case: No witness is to be excluded because he is a party to the issue. This is

broad enough to cover every case in which a party is offered as a witness; and the objection is on the ground of interest, as I have endeavored to show it must be in this case. When we look for any exception we find that there is none, except in cases in which the suit is brought by an administrator, executor, or guardian; which is not this case, there being no administrator, executor, or guardian as a party in the case.

It seems to me that in reading section 858 counsel for defendants has taken the exception in the proviso for the rule: "In the courts of the United States no witness shall be excluded because he is a party." This is the rule, with this proviso: "Provided, that in actions by or against executors, administrators, or guardians neither party shall be allowed to testify against the other." And so the court held in Potter v. Bank, 26 Int. Rev. Rec. 403.

"We have seen," says the court, in Potter v. Bank, "that the existing statutes of the United States do otherwise provide, in that they forbid the exclusion of a witness upon the ground that he is a party to or interested in the issue in any civil action whatever pending in a federal court, except in a certain class of actions which do not embrace the one now before us."

In Lucas v. Brooks, 18 Wall. 436, 453, the court says:

"Undoubtedly the act of congress has cut up by the roots all objections to the competency of a witness on account of interest. But the objection to a wife's testifying on behalf of her husband is not, and never has been, that she has any interest in the issue to which he is a party. It rests solely on public policy. To that the statute has no application."

In this latter case the deposition of the wife was refused, and in Packet Co. v. Clough, 20 Wall. 528, 537, it was received because the statute of Wisconsin made the wife a competent witness. Thus showing that the supreme court do not regard the law of congress as in any way affecting the competency of married women, but leave that to rest where it did before. It seems a little hard to reconcile the cases of Packet Co. v. Clough, supra, where the wife's deposition was admitted because the state law so prescribed, section 858 of the Revised Statutes notwithstanding, and Ins. Co. v. Schaefer, 94 U. S. 457, where a confidential communication was kept out notwithstanding the law of Ohio allowing it to be given in evidence. Both matters rest alike on public policy—neither on interest. When the laws of the United States speak they are controlling. Says the court in the latter case:

"Now the competency of parties as witnesses in the federal courts depends on the act of congress in that behalf passed in 1864, amended in 1865, and codified in the Revised Statutes, § 858. It is not derived from the statute

of Ohio, and is not subject to the conditions and qualifications imposed thereby. The only qualifications which congress deemed necessary are expressed in the act of congress; and the admission in evidence of previous communications to counsel is not one of them."

This is very strong, and fully warrants us in admitting the testimony of the plaintiff, Rice, in this case.

Coming now to the facts, there is nothing in the testimony of any of the plaintiff's witnesses, or in Norton's letter, inconsistent with the theory of the defendants that the purchase of the cattle and ranch was in fact negotiated by and through Rice, on joint account, but was given up for lack of funds to carry out the bargain. All agree that the final delivery did not take place until June 5, 1875. At that date, Rice says he was half satisfied that Norton denied his interest; yet he never, according to his own story, had any distinct understanding with Norton in his life-time. After his death he comes forward to claim a half interest in the ranch, cattle, and increase. In legal contemplation, to be *half* satisfied is to be put on inquiry, and to know definitely one way or the other. Rice, therefore, knew that Norton denied his interest in June, 1875.

Rice says, at page 52 of his testimony: "From the summer of 1875 until Norton's death, Norton and I transacted the business of partnership as follows: We consulted together," etc.; which means, if anything, that Norton recognized him as having an interest. Yet further on, at page 82 *et seq.*, he confesses that he was completely shut out from any management of the alleged partnership property, and half believed that Norton denied his rights so early as June, 1875. When the defendants assert that Rice gave up the contract because he had not enough money to perform it, he has no trouble in showing by himself (page 617) and other witnesses that he had a large amount (between $20,000 and $30,000 worth) of property. When, on the other hand, he is asked to explain why he did not move in this matter during Norton's life-time, and at least have a perfect understanding with him, he says he was too poor to bring a suit and do justice to his creditors; that being half satisfied Norton denied, or would deny, his interest if he approached him on the subject, he never said anything to him.

For a third reason or excuse for his laches he says, at page 56: "Mr. Norton always held out to me" that he would soon be able to settle accounts; *i. e.*, partnership accounts. If he believed that Norton denied his partnership interest, as he must, he could not have had any genuine belief that he would settle. One Albert Shuler

(Shuler's deposition) testifies that at the time Rice bought into the Tommy Smith place and cattle, he made arrangements with him to furnish unbroke cows to run a dairy, on the strength of which he rented a dairy house and fenced a calf pen, and his failure to furnish the cows as agreed was a great disappointment and loss. When this is compared with those portions of the testimony of Rice in which he seeks to convey the idea that he did not know positively that Norton denied his interest in the cattle, it will appear very strange that he should have subjected himself to such loss and disappointment to his friend without so much as asking Norton for cows enough to start Shuler's dairy. But it is plain, from all the testimony of Rice, that he was well enough satisfied that Norton did not regard him as his partner, at least after June 5, 1875. If, at that date, the plaintiff had been ready to comply with his part of the partnership agreement and Norton refused, plaintiff would have had his action then for a breach of that agreement. Instead of his suing then, he waits four years and sees Martin & Clark taking an interest with Norton during all that time. In addition, Dwelly takes an interest, and after the intervenors have loaned Norton $7,000 and taken these figure 2 cattle as security, and after Norton is dead, he sues for his half interest in the ranch, cattle, and increase. No sufficient reason is given for this delay, and for all these unnecessary complications of interests. The duty of the plaintiff on the fifth day of June, 1875, was plain. When he mistrusted that Norton was denying his interest in the partnership, he should have had an understanding with him at once. Had he broached the subject to Norton at that time he would have learned that Norton did deny his interest, and that he had a right of action against him for a breach of his partnership agreement, in which, if he proved the breach, he could have recovered such damages as could have been proven at that time. But it seems inequitable to permit him to lie by for four years, all the time under a belief that he was not recognized as a partner by Norton, until time has obscured every fact with doubt, and Norton is dead. 10 Whart. 168; 6 Pet. 66.

To the case as made by Rice a full defence has been proved. It is not denied that Rice, the plaintiff, negotiated the trade as related by Smith in his deposition. But the claim is that in January, 1875, he withdrew from the arrangement and gave up the cattle to Norton, with the understanding that if he could arrange his money matters so as to be able to bear his share of the cost, he should be taken back; but that he never was able to do so. In support of this, they show by

Smith, the owner of the cattle, that after Rice had negotiated for the cattle, in the fall of 1874, he came to his place with Norton and Martin, in January, 1875, and that Norton took him aside and told him that Rice was in trouble about some sheep, and that he (Norton) would take the cattle in his own name, with the consent of Rice, and that after this he considered Rice was not in the trade. Deposition of Smith, page 5. Nor, except as to some cattle paid for in 1874, does it appear that Rice ever had anything to do with the cattle or ranch after January, 1875. His conduct at this time is all in corroboration of the truth of Smith's statement; and from thence on, until June 2, 1879, when he serves his notice on defendants, claiming a half interest, he does nothing which indicates that he is a joint owner, or believed he was. He does not act like an owner. It is not probable that Norton would take the occasion when Rice was there to tell Smith what he did, unless Rice had, in fact, given his consent. It may be readily inferred, from the deposition of Smith, that Norton, Rice, and Martin came to Smith's ranch for the purpose of getting the consent of Smith to the withdrawal of Rice, and that what was said by Norton to Smith was but a continuance of some former conversation. This testimony of Smith touching any conversation with Norton out of the hearing of Rice, is objected to; but it would be admissible upon the point whether Rice did or did not assent to Norton taking the cattle, as a circumstance tending to show that he did assent. But, be this as it may, Rice's conduct at the time of the final delivery is a confirmation of the truth of the testimony that he had given up his interest in the property. His inquiry of Smith whether Norton had said anything to him about taking him *back*, and his yielding possession and control of everything to Norton and Martin & Clark, and asserting no claim, are all circumstances hard to explain on any theory of ownership in Rice. Mr. Dwelly may be interested in this suit, but it is not easy to see how. Rice, as a partner of Norton, it would seem, can have no remedy for Norton's dealings with the partnership property, except against him, in the absence of fraud or collusion.

Dwelly's testimony, corroborated by the other circumstances, and by the testimony of Welsh, ought to outweigh that of Rice. Dwelly testifies that Rice did tell him, in his butcher shop at Reno, that he had been obliged to give up the Tom Smith trade. Welsh testifies that he told him the same thing, but could get the cattle back if he could get money to work with.

The defendants have answered the criticisms of plaintiff on the testimony of Dwelly, and have explained perfectly why he testified more fully when he testified for the defendants than when he testified for the intervenors. The testimony was taken for the intervenors September 8, 1880; for the plaintiff from January 5 to 8, 1881; and for the defendants from January 21 to 26, 1881.

The bill must be dismissed, with costs to defendant; the intervenors to have the relief prayed.

SAWYER, C. J., *concurring.* The question as to the competency of Rice's testimony being an important one, I desire to add some observations to those made by my associate. Rice is a party to the suit, and also to the transaction in issue alleged to have been had between him and Norton in the life-time of the latter, under whom the opposite parties claim title. For the purposes of the decision I shall assume, without deciding the point, that the opposite parties to Rice, being successors in interest to Norton, who is deceased, are "representatives of a deceased person," within the meaning of the statute of Nevada, as amended in 1879. St. Nev. 1879, 49. The question, then, is whether the statutes of the United States have an express, direct provision upon which the competency of Rice depends, or whether the case falls within those provisions of the United States statutes which make the competency depend upon the statute of Nevada upon the subject. The testimony was incompetent at common law, because Rice is a party to the suit, and interested in the controversy. If his testimony is competent, then it is because some statute of the United States makes it so directly by some express provision applicable to the case, or indirectly by making the competency depend upon some statute of Nevada rendering it competent. If the competency is referred to the statute of Nevada, and governed by that, then, upon the assumption stated, the testimony is inadmissible under the section referred to—the opposite party being the "representative of a deceased person."

Section 858 of the Revised Statutes of the United States, applicable to the case, reads as follows:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried, provided that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects, the laws of the state in which the court is

held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

The competency of Rice's testimony depends upon the construction of the words "in all other respects," etc., of the last clause, in its relation to the rest of the section. Do they refer to the proviso immediately preceding, or to the main provision of the section, as limited by the proviso? Although the statute has been in some instances unconsciously changed in the Revision, this was unintentional, as the revisors were requested to express in the Revision, in a concise form, the statutes as they before stood; and they, doubtless, in all cases contemplated carrying out the intention as expressed in the statute authorizing the revision. Where there is any ground for doubt as to the meaning of a provision of the Revised Statutes, an examination of the statutes as they stood before the revision will often render the meaning clear. In all cases where the revision will bear a construction in harmony with the statutes as they before stood, that construction should be adopted.

The first act passed by congress touching this question was that of 1862, which is as follows: "The laws of the state in which the court shall be held shall be the rules of decision as to the competency of witnesses in the courts of the United States, in trials at common law, in equity and admiralty." 12 St. 588-9. This left the whole question to be determined by the state statute; and, under this statute, on the assumption stated, Rice's testimony would be clearly inadmissible under the amended statute of Nevada before cited,—Rice being a party, and "the opposite party" being the "representative of a deceased person," etc.

The next statute of the United States touching the question is found as an incongruous appendage to section 3 of an appropriation act of 1864, and reads as follows:

"Provided, that in the courts of the United States there shall be no exclusion of any witness on account of color, nor in civil actions because he is a party to or interested in the issue tried." 13 St. 351.

This is broad in its terms, and without exception in the case of any party in interest. Clearly, under this, Rice could not be excluded. This provision limits the operation of the provisions of the act of 1862; so that the two sections, taken together, would read as follows:

"The laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States, in trials at common law, in equity, and admiralty: provided, that in the

courts of the United States there *shall be no exclusion* of any witness * * * in civil actions because he is a party to or interested in the issue tried."

Under the statute as it thus stood, the laws of Nevada, excluding a party where the opposite party is the representative of a deceased person, is not adopted, and such party is a competent witness under the direct provision of the act of congress.

The next act of congress was that of 1865, which provides—

"That in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify againt the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."

This was but a limitation put upon the sweeping provision of the act of 1864, last cited, which admitted parties under all circumstances to testify, and the limitation only embraces the case of "executors, administrators, or guardians."

It does not reach "the representatives of a deceased person." Hence, as to such party the statute as it before stood remains unchanged, so that, on adding this further proviso to the statute as it before stood, Rice is still a competent witness. Thus the statute stood at the date of the revision, when all these three statutes were carried into section 858 of the Revised Statutes. Instead of placing the first act adopting the state law first in the section it was placed last, next following the proviso, but without any intention of changing the meaning, so that the principal clause in section 858 of the Revised Statutes, and its proviso, is merely a limitation upon the act of congress first passed, as stated, adopting the laws as to competency of witnesses, expressed in a little different form in the last clause of said section. Under this direct provision of the United States statutes, therefore, the testimony of Rice is admissible. From the foregoing it will be seen that the general rule in civil actions now, as before the revision, is that the laws of the state as to the competency of witnesses govern, except that the state laws excluding witnesses on account of color, and laws affecting the competency of parties in interest to the issue to be tried, are inapplicable. The competency of such witnesses depends wholly upon the direct provisions of the United States statutes.

Upon the facts and other points discussed, and on the decree ordered, I also concur with the district judge.