### OHLANDT *ET AL.* v. CRAVEN

#### (144 S. E., 162)

1. PRINCIPAL AND AGENT—AGENT'S AUTHORITY DIES WITH PRINCIPAL.— The authority of an agent dies with his principal.

2. ESTOPPEL—EXECUTORS, NOT PROMPTLY NOTIFYING MORTGAGOR TO MAKE ALL PAYMENTS TO THEM, HELD NOT ESTOPPED BY NEGLIGENCE TO QUESTION FINAL PAYMENT TO TESTATOR'S FORMER AGENT.—Executors, not promptly notifying testator's mortgagor after testator's death that they held bond and mortgage, that interest was due, and that all payments should be made to them, *held* not guilty of such gross negligence and laches as to estop them to question final payment of principal and interest to testator's agent.

Before SEASE, J., Charleston, July, 1927.   Modified and remanded.

---

NOTE: Death of principal as terminating agency, see 21 R. C. L., pp 159, 160; 3 R. C. L. Supp., 1193, 1198; 6 R. C. L. Supp., 1291.

Action by John F. Ohlandt and another, as executors of
the last will and testament of John H. Kohnke, deceased,
against Lillie V. Craven.   Decree for defendant, and plain-
tiffs appeal.   The circuit decree, directed to be reported, fol-
lows:

"This matter comes before me on exceptions to the Mas-
ter's report recommending the foreclosure of the mortgage
in suit and the sale of the real estate described in the com-
plaint. There are a number of exceptions, but I do not deem
it necessary to discuss them separately.   The matter was
ably and earnestly argued before me by counsel for the
parties; each side submitting written briefs in addition to
the oral argument.

"The suit is one to foreclose a mortgage on the real es-
tate described in the complaint in the sum of $1,500.00,
dated February 9, 1918; the bond being made for one year.
This suit was not brought until sometime in May, 1924. The
mortgage was originally given by Lillie V. Craven to J. H.
Kohnke, who subsequently died, and the action commenced
by his above-named executors.

"The answer of the defendant admitted the execution
of the bond and mortgage, but alleged its payment in full.

"By consent, the case was referred to F. K. Myers, Esq.,
Master for Charleston County, and, upon the testimony
taken by him, he filed his report, denying defendant's claim
of payment of the mortgage, and recommended its fore-
closure.

"The facts of the case are substantially undisputed.  The
mortgagee, J. H. Kohnke, is dead, A. A. Kroeg, Esq., the
attorney who handled the transaction, is dead, and Miss
Nipson, who was stenographer and bookkeeper in the office
of Kroeg at the time of this transaction, is also dead.  Thus
both sides have been deprived of the testimony of these wit-
nesses, whose evidence no doubt would throw great light
on the transaction.   The testimony before the Master re-
veals that in the latter part of 1917 Mrs. Craven entered

into a contract to purchase the real estate described in the complaint herein for the sum of $2,300.00. The payment for this property was arranged by the payment of $400 in cash, the assumption of a first mortgage of $1,500.00, then outstanding against the property to one F. C. Kohnke, a brother of the above-named decedent, and the execution of a second mortgage to Mrs. Ida B. Kroeg for $400.00. The deed to Mrs. Craven to complete this transaction is dated November 15, 1917, and was recorded the 22d day of November, 1917, in the record office for Charleston County. Mr. Craven, the husband of defendant herein, testified that this transaction was closed in November, 1917. I mark this date as important, in view of the subsequent relation of the parties.

"The deed to Mrs. Craven, conveying premises described in the complaint, contains the following provision:

" 'This deed is made subject to a mortgage for $1,500 from C. W. Tollner to F. C. Kohnke, dated the 15th day of November, 1910, and recorded in R. M. C. office for Charleston County in Book B, 26, p. 12.'

"The mortgage sought to be foreclosed in this action is dated February 9, 1918, several months after the original transaction was closed. The Cravens testified that Kroeg wrote them, asking Mr. Craven to call at his office, and that he was told by Mr. Kroeg that Mr. J. H. Kohnke was settling the estate of his brother, Mr. F. C. Kohnke, and that the said J. H. Kohnke wanted a new mortgage on this property directly to him.

"It will be observed that the original mortgage assumed by Mrs. Craven was to F. C. Kohnke, predeceased brother of J. H. Kohnke. J. H. Kohnke apparently desired to get rid of this old mortgage and to take a new one for himself, as he was the beneficiary under his brother's will, and no doubt had requested Kroeg to obtain this new mortgage for him in order to effect his purpose. At any rate, the testimony reveals that Kroeg prepared this new bond and

mortgage and took it to Craven's house, in the City of
Charleston, with the request that Mrs. Craven sign it. These
papers were executed at Craven's house; Kroeg and Mr.
Craven being witnesses on the papers.

"At the time these papers were signed by Mrs. Craven,
Kroeg stated that he was Mr. Kohnke's attorney, and that
they could make payments at interest periods in sums not
less than $100.00, and this statement is vouched for both
by Mr. and Mrs. Craven. The mortgage sought to be fore-
closed in this matter was made for one year. It matured,
therefore, and became due on February 9, 1919. The mort-
gage, however was not called by Kohnke, but allowed to
run as a past-due paper. Meanwhile Craven regularly paid
his interest to Kroeg and at different times paid him upon
the principal sums which total the full amount of the mort-
gage debt. The first of these partial payments was made
August 22, 1919, more than six months after the maturity
of the bond and mortgage. A copy of a letter is in evi-
dence, dated August 22, 1919, and addressed to J. H.
Kohnke, which letter was taken from the files of Kroeg,
reading as follows:

" 'Dear Sir: I am inclosing my check to your order for
$100 on account of principal of the bond and mortgage of
Lillie V. Craven.'

"Upon the final payment of Kroeg of the sum of $300 in
December, 1921, he gave Craven an affidavit that the mort-
gage had been paid in full and he would secure the satis-
faction of the mortgage just as soon as practicable.

"Kroeg was what is known as a real estate lawyer, well
known by reputation in the City of Charleston as a lender
of money, representing a number of lenders, and controll-
ing large sums for loans.

"In addition, the undisputed testimony in this case is that
it is a general custom at the Charleston bar that, when a
loan is made through an attorney, the borrower repays the
loan to the attorney through whom it is made.

"Upon these facts substantially, the Master held that there was nothing in the testimony, in his judgment, on which to base a finding that Kroeg was the authorized agent of Kohnke to receive the payments on the principal of the mortgage. The Master based his finding on the single ground of agency or lack of agency. The position of defendant, however, both before the Master and before me, upon the exceptions presented, is that the testimony in this case does support the contention that Kroeg had authority, real or apparent, to collect the principal and the interest of this mortgage, but in addition that, even in the absence of any showing of agency, under the broad principles of equity set out in the exceptions, the finding of the Master should have been in favor of the defendant.

"Did Kroeg have authority, real or apparent, to collect the principal of the mortgage in this case? In *Knight v. Jackson,* 36 S. C., 10; 14 S. E., 982, a like question was considered by the Supreme Court. In disposing of the contention that the declarations of the agent were incompetent, the Supreme Court said:

" 'We hold that declarations of the agent, made on the very occasion of the taking of the bond and mortgage, in relation to the person to whom such payments could be actually made for the obligee of the bond by the obligor of such bond, were a part of the *res gestae,* and, therefore, admissible to bind the defendant.'

"To the same effect, *Land v. Reese,* 136 S. C., 267; 134 S. E., 352. *Cogswell v. Cannady,* 135 S. C., 365; 133 S. E., 834.

"And agency may be proved by circumstantial as well as positive testimony. *Cogswell v. Cannady, supra.*

"The undisputed testimony is that, when Kroeg obtained from Mrs. Craven the bond and mortgage sought to be foreclosed in this action, he told Mrs. Craven that he was Mr. Kohnke's attorney, and that payments could be made at interest periods of not less than $100; that he represented

Mr. Kohnke, and Mrs. Craven could pay him the money. At the time these statements were made, was Kroeg the real or apparent agent of Kohnke? From the testimony, it appears that the original transaction for which Kroeg was employed by Craven was closed November, 1917. For his own convenience, and for his own purpose, Kohnke thereafter saw Kroeg and requested him to prepare for him a new mortgage from Mrs. Craven and to have it executed by her. Kroeg, acting at the request and on the authority of Kohnke, prepared this new mortgage from Mrs. Craven to Kohnke, made an appointment with her at her home, and had her execute these new papers in accordance with Kohnke's request, and these papers were recorded by Kroeg and turned over to Kohnke. It seems to me that, as to this transaction, Kroeg unquestionably was Kohnke's active, positive agent. The relation between Kroeg and Craven had ceased and terminated in November. The renewal of relations between Kroeg and Craven in February was for and on behalf of Kohnke solely. Therefore, when Kroeg told the Cravens at the time they signed these papers that they could make payments to him, he was Kohnke's agent, and his statements are admissible under the cases cited to bind the mortgagee and his executors.

"It is my opinion, further, that this case was not a case of general agency, but of particular agency, or agency for a particular purpose. Under such representation by the agent of Kohnke, it was not necessary for Craven to know whether Kroeg was in possession of the bond and mortgage at the time the payments were made, in order to make them legal. *Land v. Reese, supra.*

"My view that this was an agency for a particular purpose and for a single transaction is especially sustained by the evidence which reveals that Kohnke handled this transaction differently from all others to which my attention has been called. According to the record in this case, many loans were made for Kohnke through Messrs. Moffett &

Hyde. They, however, never collected any interest for Kohnke, nor did they collect the principal on any mortgage for him except through foreclosure. In fact, the testimony is (by the executor and by Mr. Moffett also) that Kohnke did all the collecting of his own interest. It is undisputed, however, that in this transaction Kroeg collected the interest and transmitted it by letter regularly to Kohnke—a different course of dealing entirely on the part of Kohnke as to this transaction than any other revealed by the record.

"It is my opinion, therefore, that, in making payments to Kroeg, the Cravens were making payments to the agent of Kohnke, and that, having paid the mortgage in full to the agent of Kohnke, the defense of payment is sustained, and the exceptions making that point are likewise sustained · by me.

"The other exceptions to the Master's report make substantially the point that, where one of two innocent persons must suffer by wrongful act of a third, he will be required to bear the loss who is most at fault in allowing it to be brought about. This principle of equity has been recognized in many decisions of our Courts. *Land v. Reese, supra. Leaphart v. Selby,* 135 S. C., 1; 133 S. E., 451. *Moffatt v. Hardin,* 22 S. C., 9. *Middleton v. Cockfield,* 113 S. C., 282; 102 S. E., 328.

"Which of the two parties to this transaction should sustain the loss? Craven is an ordinary boatman, a mechanic, unversed in business affairs, while Kohnke was an old bachelor of means, constantly engaged in business matters and particularly in the investing and lending of money.

"'The bond and mortgage in this action was made to run for one year. It matured February 9, 1919. Kohnke did not call the loan, nor did he in any way communicate with the Cravens, but he allowed the loan to run on. Craven from time to time after the maturity of the bond made payments to Kroeg. Craven testified, and Mr. Witsell testified, that the general custom of the Charleston bar was to

repay loans to the attorney through whom they were made. This custom Craven knew about and Kohnke is presumed to have known about.

" 'A party to a contract may be bound by custom not inconsistent with the terms of the contract, even though he is ignorant of the custom, if it is of such general and universal application that he may be conclusively presumed to know of it.' 27 R. C. L., p. 162.

"Knowing of this custom, or presumed to have known of it by reason of his experience and by reason of its notoriety in Charleston, Kohnke nevertheless sat by and said nothing. The mortgage was almost three years past due when he died in October, 1921. Whether or not he received the letter of August 22, 1919, referred to above, enclosing the first payment on account of the principal, is not proven conclusively. It can hardly be presumed, however, that Kroeg wrote this letter as a useless and futile act and did not transmit the payment therein referred to.

"Kohnke unquestionably got Kroeg to handle this transaction for him. Why he did not get his regular attorneys, Messrs. Moffett & Hyde, does not appear. The fact stands, however, that he did give Kroeg the authority to collect the interest on this bond, contrary to his usual method of doing business, and subsequently to collect the principal. No communication whatsoever was had between him and the Cravens. He sat silently by and allowed this money to be paid. In my opinion, under all the testimony in this case, it was he who was most at fault and that he or his estate now must suffer the loss. In my opinion, it would be inequitable, and unjust to cast this loss upon the defendant for whom the foreclosure of this mortgage means ejectment.

"It is, therefore, ordered, adjudged, and decreed that the exceptions to the Master's report in this case be, and they are hereby, sustained.

"Further ordered, adjudged and decreed that the mortgage sought to be foreclosed in this action has been paid in full, and that the complaint in this case be dismissed."

*Mr. Simeon Hyde, Jr.,* for appellants, cites : *Possession of mortgage by other than mortgagee sufficient to put payer on notice as to authority of holder to receive payment:* 15 S. C., 171. *As to authority of agent to receive payment:* 133 S. E., 835; 132 S. C., 340; 122 S. E., 511; 110 S. C., 99; 126 S. C., 273. *Cases distinguished:* 133 S. E., 835; 134 S. E., 252. *As to estoppel:* 131 S. E., 602. *Res gestae:* 36 S. C., 10; 134 S. E., 252. *Proof of agency:* 17 S. C., 139; 44 S. C., 81. *Parol testimony inadmissible to contradict or vary terms of written instrument:* 46 S. C., 372; 119 S. C., 340. *When usage becomes law:* 3 McCord, 121; 1 Mill. Const., 308; 27 R. C. L., 162; 222 Pac., 817; 32 A. L. R., 1215. *Evidence of custom and usage not admissible to vary terms of express contract:* 114 S. C., 370; 129 S. C., 53; 131 S. E., 621. *Death terminates agency:* 27 S. C., 309; 106 S. C., 300; 124 S. C., 100. *Power of agent generally:* 128 S. C., 417; 132 S. C., 340; 31 Cyc., 1322, 1325, 1368, 1371.

*Messrs. Logan & Grace,* and *John I. Cosgrove,* for respondent, cite : *As to agent receiving payment:* 137 S. E., 204, 329; 134 S. E., 252; 1 Mechem on Agency, 520; 10 Rich., 332.

August 13, 1928.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The circuit decree, which will be reported, contains a statement of the issues involved in the controversy.

While we do not approve of all said by the Circuit Judge with respect to the law, we think that the evidence, which we deem unnecessary to discuss in detail, sufficiently establishes Kroeg's agency for Kohnke. We are not, however, satisfied with the Court's disposition of the question relating to the

validity of the final payment made by the mortgagor, Craven, to Kroeg. The mortgagee, Kohnke, died October 28, 1921; the last and final payment on the bond, in the sum of $314 principal and interest, was made by the mortgagor to Kroeg on December 7, 1921, more than a month after Kohnke's death. ·

1, 2    There is no doubt that the authority of Kroeg, as the agent of Kohnke, died with his principal; but the respondent contends that, even if this be conceded, the executors of the estate, in not promptly notifying the mortgagor that they held the bond and mortgage, that interest was due November 7, 1921, and that all payment should be made to them, were guilty of such gross negligence and laches as will estop them to question the final payment.

We think this contention is without merit. The executors had the right to assume that payment of all debts owing the estate, whether secured or otherwise, would be made by debtors to the proper party—that is, to the executors. No good reason is made to appear why Mrs. Craven was entitled to the notices claimed by her. Though acting in good faith, she unfortunately made the payment to Kroeg at a time when he was without authority to receive it, and to this mistake on her part, coupled with his unlawful conduct in receiving the money and in not paying it over to the executors, her misfortune is solely due. We may add, in passing, that the executors did not even know, at the time of the final payment to Kroeg and for a long time after his death, that he had been acting as Kohnke's agent in the collection of the debt. .

We find, and so hold, that the plaintiff, John F. Ohlandt, as executor of Kohnke's estate, is entitled to judgment against the defendant, Lillie V. Craven, in the sum of $300, with interest thereon from the 7th day of August, 1921, at the rate of 7 per cent. per annum, to be computed quarterly, plus the interest on $200 from the 7th day of August, 1921, to the 3d day of October, 1921, at the rate of 7 per cent.

per annum, and 10 per cent. on the whole amount owing as attorney's fees, with costs; also that he is entitled to foreclosure of the mortgage in question and sale of the property described in same, in conformity to the law governing in matters of foreclosure. In these respects and to this extent the circuit decree is modified.

The case is therefore remanded to the Circuit Court, with leave to the plaintiff to apply to and obtain from the Court of Common Pleas a decree in accordance with the views herein expressed; and it is so ordered.

Mr. Chief Justice Watts and Messrs. Justices Blease and Carter concur.

Mr. Justice Cothran (dissenting): This is an action for the foreclosure of a mortgage given by the defendant to one John H. Kohnke, of whose will the plaintiffs are executors. The defendant pleads payment in full of the bond secured by the mortgage, and relies upon payments made by her to one A. A. Kroeg, an attorney of Charleston, which in fact never reached the mortgagee John H. Kohnke. The vital question in the case is whether Kroeg was authorized, as an agent of Kohnke, to accept and receipt for the payments made by Mrs. Craven to him, on account of the principal. It appears that Kroeg embezzled the payments made to him by Mrs. Craven, and the issue is, Upon whom shall the loss fall?

It appears that in November, 1910, Frederick C. Kohnke, brother of the testator, John H. Kohnke, was the owner of two houses and lots in the City of Charleston, Nos. 10 and 12 Chinquapin Street. On November 15, 1910, he conveyed both lots to one Tollner, who executed to him a mortgage upon both lots to secure his bond of $3,000. Tollner conveyed both lots to Berkley Investment Company, apparently subject to the $3,000 mortgage. The Berkley Company conveyed lot No. 12 to one Von Oven, and F. C. Kohnke released that lot from the lien of his mortgage, leaving $1,500 due thereon secured by the mortgage upon

the other lot, No. 10.  The Berkley Company conveyed lot No. 10 to one Petit, subject to the $1,500 balance due on the Tollner mortgage to F. C. Kohnke.  On November 15, 1917, Petit conveyed lot No. 10 to the defendant Lillie V. Craven, subject to the same incumbrance.

In the meantime, F. C. Kohnke had died, in 1912, leaving a will under which his brother, the testator, succeeded to the title to the bond and mortgage, which Tollner had given, in 1910, to F. C. Kohnke.

It does not distinctly appear, but I assume that, when lot No. 12 was released from the Tollner mortgage, by F. C. Kohnke, it had been reduced to $1,500.

After Mrs. Craven had purchased lot No. 10, subject to this balance due on the Tollner mortgage, the testator, for some reason not explained, preferred to have a new bond and mortgage executed by Mrs. Craven.  Accordingly, on February 9, 1918, she executed her bond for $1,500, payable 12 months after date, to the testator, John H. Kohnke, with interest from date at 7 per cent., payable quarterly, and the executors of F. C. Kohnke executed a release, discharging lot No. 10 from the lien of the mortgage executed by Tollner to F. C. Kohnke.

The new bond and mortgage, at the request of Mr. Craven, was carried by Kroeg to the home of Mrs. Craven, where they were executed; he and Mr. Craven being the witnesses to the mortgage.  Kroeg had the mortgage recorded, and on March 1, 1918, transmitted it by mail to John H. Kohnke, with the insurance policy.

Mr. Craven testified that shortly before the execution of the new papers, he received a letter from Kroeg, asking him to come down and see him; that he went, and was told that a new mortgage had to be executed; that John H. Kohnke was settling up the estate of F. C. Kohnke, and that he would have to make a new mortgage to John H. Kohnke; that he asked Kroeg to bring the papers to his house, which he did, and they were executed there.

It appears that Kroeg was the regular attorney for Craven; had prepared other papers for him, and it was to Kroeg that Craven applied to push through the negotiations for the purchase of the house and lot which had been consummated in November, 1917, prior to the date of the execution of the new papers, in February, 1918. That deal was closed by the payment in cash by the Cravens, of $400, a loan by Kroeg for his mother of $400, secured by a second mortgage, and the assumption of the $1,500 balance due on the original Tollner mortgage to F. C. Kohnke, which made up the purchase price to Petit from whom the Cravens, through Kroeg, were purchasing, of $2,300.

As the execution of a new bond and mortgage was to the interest of John H. Kohnke (if to the interest of any one, certainly a matter of indifference to Mrs. Craven), it is reasonable to assume that John H. Kohnke took the initiative in the matter, and doubtless communicated his desire, through Kroeg, to Mrs. Craven. It does not appear who prepared the new bond and mortgage, or who was paid for the preparation of them. But, if Kroeg was employed by John H. Kohnke to prepare and procure the new papers, had done both, and had been paid by John H. Kohnke therefor, this would be very far from establishing the material issue in the case, *that Kroeg was authorized to collect and receipt for payments upon the principal of the debt.* The transaction was at best not a loan negotiated by Kroeg for John H. Kohnke, but a substitution of "new lamps for old," which was completed when the new papers were executed, recorded, and delivered to John H. Kohnke.

In his decree, his Honor, the Circuit Judge, says:

John H. Kohnke "no doubt *had requested Kroeg to obtain his new mortgage for him* in order to effect his purpose. At any rate, the testimony reveals *that Kroeg prepared this new bond and mortgage* and took it to Craven's house in the City of Charleston, with the request that Mrs. Craven sign it. * * * For his own convenience, and for his own

purpose, *Kohnke saw Kroeg and requested him to prepare for him a new mortgage from Mrs. Craven, and to have it executed by her.* Kroeg, *acting at the request and on the authority of Kohnke,* prepared this new mortgage from Mrs. Craven to Kohnke, made an appointment with her at her home, and had her execute these new papers *in accordance with Kohnke's request,* and these papers were recorded by Kroeg and turned over to Kohnke. It seems to me that, as to this transaction, Kroeg unquestionably was Kohnke's active positive agent." (Italics added.)

There is not a particle of *direct* evidence to sustain these statements. There is only an inference that, because the execution of the new papers was to gratify a whim of John H. Kohnke, or redounded to his interest, if to that of any one, John H. Kohnke must have suggested it; but, as to his having engaged Kroeg to carry it through, or that Kroeg prepared the papers, the evidence is absolutely silent.

If the statements of his Honor should be sustained by the evidence, his further statement, " *  *  *  As to this transaction, Kroeg unquestionably was Kohnke's active, positive agent," would unquestionably be true; but how that particular agency clothed Kroeg with the authority to collect and receipt for payments upon the principal, is more than I can understand.

In the case of *Cogswell v. Cannady,* 135 S. C., 365; 133 S. E., 834, the Court, citing the cases of *Bacot v. Loan & Trust Co.,* 132 S. C., 340; 127 S. E., 562. *Morris v. Carlisle,* 128 S. C., 417; 122 S. E., 511. *Bank v. Cook,* 110 S. C., 99; 96 S. E., 484, and *Wilson v. Brabham,* 126 S. C., 273; 119 S. E., 829, declares:

"The cases cited hold, without doubt, that, because an agent negotiates a loan, that fact alone gives him no implied authority to receive payment, unless he has possession of the evidence of the indebtedness. They further decide that payment is an affirmative defense, and that, where payment to agent is alleged, such agent's authority to receive payment

must be shown. Again, these cases are authority for the view that an agent may have the right to collect the interest without like right to collect principal."

This case decides three very important principles applicable to the case at bar:

(1) The fact alone that an agent may have negotiated a loan gives him no implied authority to receive payment of the loan unless he has at the time possession of the loan papers.

(2) That, when the debtor claims to have made payment to one other than the record creditor, the authority of such person to receive payment must be shown.

(3) That the authority to receive payment of the principal of the debt, or a part thereof, cannot be implied from the authority of an agent to receive payment of the interest upon the debt.

In the first place, if the law were otherwise than as declared in subdivision 1, just stated, there is not the slightest evidence in this case that Kroeg *negotiated a loan* for John H. Kohnke or for Mrs. Craven. Assuming that, in *the novation of the debt,* Kroeg was acting as agent of John H. Kohnke, the transaction amounted to nothing more than a substitution of one security for an existing one, and presumably spent its force with the completion of the substitution.

It is conceded that, immediately upon the recording of the new mortgage, it was transmitted by Kroeg to John H. Kohnke and remained in his possession continuously as long as he lived. Kroeg never had at the time of a single payment on the principal by Craven, possession of the "evidences of indebtedness," and their presentation was never requested by Craven.

The rule appears to be established in this State that the declarations of an alleged agent may be received in corroboration of other evidence along that line as admissible upon the issue of agency.

As is said in *Cogswell v. Cannady,* 135 S. C., 365; 133 S. E., 834:

"It is true that agency may not be established by the declarations and conduct of the alleged agent alone, but such declarations and conduct are admissible as circumstances in connection with other evidence tending to establish the agency. *Bass v. American Products, etc.,* 124 S. C., 346; 117 S. E., 594; 30 A. L. R., 168. *Watkins v. Railroad Co.,* 97 S. C., 150; 81 S. E., 426. *Buist Co. v. Lancaster Mercantile Co.,* 73 S. C., 48; 52 S. E., 789."

This rule is applicable only where there is other evidence of the agency. In the case at bar, there is not a circumstance outside of the received testimony of Mr. and Mrs. Craven of declarations of Kroeg, which tends to establish Kroeg's agency to receive the payments of principal.

It was conclusively established that Kroeg had never represented Kohnke, that the transaction under consideration was a single, isolated transaction, and that there was no general course of dealing between the parties, as was found to exist in *Land v. Reese,* 136 S. C., 267; 134 S. E., 252, in which last case Barron was the general agent of Land. There is no element of waiver or estoppel present, nor is there any evidence of ratification, as was held to be the case in *Cogswell v. Cannady.* I think, therefore, that the testimony should not have been received.

In the circuit decree it is declared:

"It seems to me that, as to this transaction (referring to the preparation and execution of the new bond and mortgage), Kroeg unqestionably was Kohnke's active, positive agent. The relation between Kroeg and Craven had ceased and terminated in November. The renewal of relations between Kroeg and Craven, in February, was for and on behalf of Kohnke solely. *Therefore when Kroeg told the Cravens, at the time they signed these papers, that they could make payments to him, he was Kohnke's agent, and*

*his statements are admissible, under the cases cited, to bind the mortgagee and his executors."*    (Italics added.)

Assuming that Kroeg was the agent of Kohnke for this purpose, and of Kohnke alone (although Mr. Craven directed him to bring the papers for execution to his home), the responsibility of Kohnke for the declaration of Kroeg was limited to such as were connected with the subject of the agency, the preparation and execution of the papers; it could not be extended to an entirely extraneous matter, as was the payment to him of installments upon the principal debt.

I think that, at the best, Kroeg could be considered as the agent of both parties, and that neither was bound by his declarations or assurances.

The statement relied upon, as having been made by Kroeg, testified to by Mr. Craven, was:

"Mr. Kroeg told me that he was Mr. Kohnke's *attorney,* and that we could make payments on interest periods total not less than $100." (As a matter of fact, not a single one of the payments made by Craven to Kroeg on the principal was made upon an interest period.)

Testified to by Mrs. Craven, the statement was:

"Mr. Craven asked him how he was to pay this money, and Mr. Kroeg told him in any amount he wanted to, and in any amount but not less than $100."

The testimony was inadmissible upon two grounds:

(1) It tended to vary the terms of the bond which declared the maturity of the bond to be twelve months from date.

(2) It was entirely disconnected from the agency claimed to have existed—the preparation and execution of the new bond and mortgage.

In Tiffany, Agency, p. 282, it is said:

"It is not enough, however, to show that the relation existed when the statement was made. It must appear that he was acting as such in making the statement.  *  *  * In other cases it must appear that the statement was made

while the agent was engaged in transacting some authorized business for his principal, and *had reference to and was connected with that business, so as to be a part of the pending transaction."*

In *U. S. v. Gooding,* 12 Wheat., 460; 6 L. Ed., 693, Justice Story quotes with approval, the following from 2 Stark. Ev., 60:

"Where * * * the fact of agency has been proved, either expressly or presumptively, the act of the agent, *coextensive with the authority,* is the act of the principal, whose mere instrument he is, and then, whatever the agent says, *within the scope of his authority,* the principal says, and evidence may be given of such acts and declarations, as if they had been actually done and made by the principal himself."

See, also, *Packet Co. v. Clough,* 20 Wall., 528; 22 L. Ed., 406.

"The power of an agent to speak for his principal is confined strictly within the scope of his authority. 1 Greenl. Ev., § 113. Any statements concerning matters beyond this are hearsay and inadmissible." *Fogg v. Pew,* 10 Gray (Mass.), 409; 71 Am. Dec., 662.

In *Pratt v. R. Co.,* 102 Mass., 565, it was held that the declarations or admissions of an agent, not accompanying or forming part of any official act, and not within the scope of his authority, are mere hearsay, and are inadmissible against his principal.

"It is a recognized principle that an agent can bind his principal *while acting within the scope of his authority."* *Williams v. Tel. Co.,* 138 S. C., 281; 136 S. E., 218.

"Prncipal is bound by declarations of agent *made within the scope of his employment."* *Ragsdale v. R. Co.,* 72 S. C., 120; 51 S. E., 540.

"The rule of law is that the admissions of an agent bind the principal if made during the agency and within its scope as to a matter then depending." *Tenhet v. R. Co.,* 82 S.

C., 465; 64 S. E., 232—citing *Meinhard v. Youngblood,*
41 S. C., 325; 19 S. E., 675. *Ragsdale v. R. Co.,* 72 S. C.,
124; 51 S. E.; 540. *Crawford v. R. Co.,* 56 S. C., 144; 34
S. E., 80. *Stroud v. R. Co.,* 79 S. C., 452; 60 S. E., 963
*Lipscomb v. R .Co.,* 65 S. C., 156; 43 S. E., 388. *R. v.
Howell,* 79 S. C., 288; 60 S. E., 677.

"The general rule is that declarations or admissions of
the agent, within the scope of the agency, are admissible in
evidence in a suit against the principal. But in this case
the alleged admissions of the agent was not within the scope
of the agency, which was to operate the railroad." *Rookard
v. R. Co.,* 84 S. C., 190; 65 S. E., 1047; 27 L. R. A. (N.
S.), 435; 137 Am. St. Rep., 839.

In *Moore v. Dickinson,* 39 S. C., 441; 17 S. E., 998, the
Court said:

"While the rule is well settled that, after the agency is
established, the acts, declarations, or admissions of the
agent, within the scope of his agency, are competent evi-
dence against the principal, yet it is equally well settled that
such acts, declarations or admissions, as to matters not
within the scope of the agency, are not competent evidence
against the principal. 1 Greenl. Evid., §§ 113, 114; 1 Am.
& Eng. Enc. Law, 410. Now, while in this case there is
abundant testimony to show that Colton was the agent of
Dickinson in managing and carrying on the work of con-
structing the railroad in North Carolina, we do not find
any testimony tending to show that Colton was agent for
collecting the money from the Massachusetts & Southern
Construction Company, and, therefore, any declaration or
admission made by Colton as to what Dickinson had said
to him in reference to such collections, was merely hearsay,
and as such incompetent. It seems to us that the only just
inference that can be drawn from the testimony is that Dick-
inson, residing in New York, attended to that himself, and
that Colton had nothing to do with it. Colton's declaration
as to what Dickinson may have said to him, in relation to a

matter which does not appear to have been within the scope
of his agency, should have been held incompetent."

It would be different if Kroeg, while the agent of the
mortgagee, had made such statements in order to induce
the execution of the new papers and the mortgagor had
acted upon such statements. Of this there is not a particle
of evidence.

I have given little weight to the suggestion of a custom
existing in the City of Charleston for debtors to pay the
attorney who negotiated a loan the principal thereof,
without the assurance that the loan papers were in the pos-
session of the attorney for collection, or of some express
authority upon his part to collect, for two reasons:

(1) In view of the very clear and reasonable testimony
of Mr. Moffett, in whose integrity and ability I have the ut-
most confidence, I do not believe that such a custom ever
existed.

(2) There was no negotiation of a loan in this case by
Kroeg. The loan had existed for years, and all that he had
a hand in was the substitution of the new papers for the old.

Applying the familiar rule that, where one of two par-
ties, both innocent of actual participation in the fraud of a
third person, must bear a loss, it should fall upon the party
whose active conduct or passive negligence has supplied the
opportunity for such fraud, I have not a doubt as to what
the decision should be.

Kroeg was never the attorney for Kohnke, except possibly
(and that is not clearly established) as an intermediary in
the single transaction of a substitution of the securities. On
the other hand, he was the trusted counsellor of the Cra-
vens, had transacted much business as their attorney, "I
did all of my business at that time through Mr. Kroeg"
(testimony of Mr. Craven).

Craven, it appears, relied upon Kroeg's declaration that
he was authorized to collect the principal of the debt, without
the slightest effort to have that statement confirmed by

Kohnke, who he knew was the mortgagee, and without exercising the slight care of ascertaining that Kroeg had possession of the mortgage, which the evidence shows had been recorded and delivered to Kohnke.

I cannot see that Kohnke was in the slightest degree derelict in the matter. After Kroeg had collected the several payments on account of principal, he continued to remit to Kohnke the interest upon the whole principal as if no payments had been made, lulling Kohnke into the assurance that none had been made. The fact that Kohnke accepted these payments of interest ·from Kroeg should not be charged against him, as he could reasonably have inferred that in such remittances Kroeg was acting for Craven.